[1] The preliminary motion to suppress the use thereafter in that pending criminal case of certain evidence charged to have been illegally obtained is distinct and separate from the motion for the return of the goods charged to have been illegally seized; by joining them together the order denying the return of the goods is no less final, because the order denying the suppression of their use as evidence may be interlocutory.

[2] The parties, moreover, had a choice of remedies between the present proceedings and the motion in the criminal case for a return of the goods. They chose the latter; they submitted the issues thereon to the trial judge; on the merits they were denied the relief sought in the first instance, and were deemed barred thereby in the second attempt. That second action was final; and, if the first motion can be deemed by agreement of the parties to have included the return of the property, the order thereon was likewise final.

[3, 4] The reasoning of the opinion in Perlman v. U. S., 247 U. S. 7, 38 S. Ct. 417, 62 L. Ed. 950, as well as in Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, fully supports the conclusion that the orders on the preliminary motions and petitions in the criminal case were final and as such reviewable in this court; though entitled in that criminal case, they were no essential part of the trial therein; as preliminary matters they were as independent therefrom as were the petitions in the Perlman and Burdeau Cases.

[5] We may add, however, that we concur fully in the findings of the trial judge that, irrespective of the validity of the search warrants, the search and seizure under the circumstances was not unreasonable. It was not the private dwelling, but the business building, that was searched, and it was in the basement of that business building that the liquor was found. In this respect it was unlike Agnello v. U. S., 46 S. Ct. 4, 70 L. Ed. ——, decided October 12, 1925.

Affirmed.

---

**SCHOONMAKER–CONNERS CO., Inc., v. ROSOFF ENGINEERING CO., Inc., et al.**

(Circuit Court of Appeals, Second Circuit. November 2, 1925.)

No. 60.

1. **Shipping ⬅➡62—Captain of chartered scow, remaining on board, represented owners.**

Captain of chartered scow, remaining on board, though nothing was said about including him, represented the owners, as to attending to the lines, etc.

2. **Shipping ⬅➡54—Charterer of scow held liable for damage, unless, as pleaded, caused by captain's negligence.**

Charterer of scow, agreeing to return it in same condition, less ordinary wear and tear, was liable for injury to it from sinking at wharf, unless, as pleaded, due to negligence of owners' captain.

3. **Shipping ⬅➡58(2)—Charterer of scow held to have sustained burden of proving sinking at wharf was due to negligence of owners' captain.**

Charterer of scow, sued for injury to it by resting on rock at wharf at low tide, *held* to have sustained its burden of proving accident was due to negligent failure of owners' captain to attend to the lines.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Schoonmaker-Conners Company, Inc., against the Rosoff Engineering Company, Inc.; the Walsh Engineering Company, Inc., being impleaded. Libel and impleading petition dismissed, and libelant and respondent Rosoff Company appeal. Affirmed.

The opinion of Ward, Circuit Judge, in the District Court, is as follows:

[1] "September 21, 1921, John D. Schoonmaker and Arthur Conners, owners of the scow W. L. Howland, substituted for the Schoonmaker-Conners Company, as libelants, chartered her to the Rosoff Engineering Company for $8 a day, to be returned in the same condition as when received, less ordinary wear and tear. Nothing was said about including the captain, but he did remain on board and represented the owners, as to attending to the lines, etc. Dailey v. Carroll, 248 F. 466, 160 C. C. A. 476.

"September 23, 1921, at 9 a. m., the scow berthed with her port side alongside the river end of Dolan's Wharf, at Coxsackie, N. Y., on the west bank of the Hudson river, secured, as usual, by two spring lines fore and aft, and by a breast line at either end to posts on the wharf, and was found sunk on the early morning of September 24. This libel was filed to cover the expense of raising and repairing the scow and for loss of her services in the meantime.

"The Rosoff Company in its answer admits the charter as stated in the libel, and also the damage to the scow, but alleges that the charter included the captain, whose failure to properly guard the scow and attend to her lines caused the sinking. It also impleaded

the Walsh Company under the fifty-sixth rule in admiralty, alleging that it had sold that company the cargo of sand to be delivered alongside the wharf at Coxsackie, to be furnished by the Walsh Company, which company designated Dolan's Wharf, where the bottom was dangerous, and there was not water enough to float the scow at all stages of the tide.

"The Walsh Company, which had taken over from Dolan the right to discharge cargoes of sand consigned to it, filed no answer to the libel, but answered the petition to the effect that the scow sank as the result of the negligence of the petitioner, which knew or ought to have known that the berth was dangerous, and also of the negligence of the libelant's captain and of Michael Dolan, the owner of the wharf. Dolan has not been impleaded.

"Dolan, who would naturally speak as well of the wharf as possible, admitted that he had not used it for 10 years before the Walsh Company took it over; that it was 400 feet wide at the river end, and he had been using it dug out about 200 feet; and that, when he loaded sand scows, he always loaded the stern first, and then the bow, so that the scow should not 'shove onto' the part where he had not dug out.

"The scow in question was the first boat that the Walsh Company had berthed at the wharf, and its president admitted that he had made no examination of the bottom then. The circumstance that boats consigned to the Walsh Company, with cargoes as large or larger, subsequently berthed there safely, is entirely consistent with proper precautions having been taken as to the place of berthing and attention to the breast lines.

"The libelant John D. Schoonmaker, with one Spinnewetter, found the scow that morning with her bow some 3 feet out of water and her stern awash. They took soundings, and found that the scow was resting on a rock on the port side about 20 feet from the bow, and when she was repaired one whole and two half planks had to be replaced at this point. As the scow had lain safely for one low tide on the afternoon of the 23d, it is significant that she rested on this rock at the next low tide on the early morning of the 24th. The evidence is that the captain was

10 F.(2d)—5

notified on the 23d that he must slack out his breast lines at high water, so as to let the scow swing out as the tide fell, and the impleaded respondent insists that it was his failure to do so that caused the accident.

"It is also suggested that there could have been no break in the bottom, because the wreckers could not have raised the scow, if there was one. But holes in a sunken boat are always temporarily repaired before any attempt is made to raise her. It would be impossible to pump her out without doing so. [2, 3] "As the Rosoff Company had agreed to return the scow in as good order and condition as when received, less ordinary wear and tear, it will be responsible to the libelants for the damage, unless it was due to the negligence of their captain. Jova Brick Works v. City of New York (C. C. A.) 277 F. 180. The burden of proving that the accident was due to the negligence of the captain is on the charterer, and I think it has sustained this burden. I do not believe that the bow of the scow, loaded with nearly 700 tons of sand, could have been held up by her forward breast line, while the stern sank with the tide. Dolan testified that the structure was a crib—that is, the frame is first set up, and then filled with earth and stone—and that it was no wider at the bottom than at the top. I am satisfied that the boat did rest on the rock in question because of the captain's failure to attend to the lines.

"The libel against the Rosoff Company is dismissed, with costs, and the petition impleading the Walsh Company is dismissed, with costs against the Rosoff Company."

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for Schoonmaker-Conners Co.

Lampke & Stein, of New York City (Chauncey E. Treadwell, of New York City, of counsel), for Rosoff Engineering Co.

Leslie & Alden, of New York City, for Walsh Engineering & Contracting Co.

Before HOUGH, MANTON, and HAND, Circuit Judges.

PER CURIAM. Decree affirmed, on the opinion of Ward, Circuit Judge, in the court below.