### CALHOUN v. DALY.

District Court, S. D. New York.
Nov. 24, 1936.

William J. Mahar, of New York City, for libelant.

James E. Turner, of Brooklyn, N. Y., for respondent.

CLANCY, District Judge.

The libel in this case was filed by the complainant as administratrix of the estate of her husband, who was killed in an accident on the canal barge Hope on the 20th day of October, 1931. The decedent was fifty-six years old and the administratrix is his second wife; they having married in Lawrence county, S. C., on May 8, 1921.

After the holidays in 1930 or early in 1931, the administratrix had gone to Hendersonville, S. C., for her health and never saw the decedent again but claims he sent to her there, money payments averaging $10 weekly. Before her departure for the South, and since 1925, they had lived together in New York City and the decedent had paid all the expenses of maintaining a home and earned about $30 weekly. There are no children of this marriage. One of the many children of an earlier marriage, Bertha Calhoun, came to live with the libelant and her husband, and after his death collected $423.64 under the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, together with the sum of $200 for funeral expenses. It does not appear that any of the decedent's other children lived with him or were supported by him or were dependent upon him at the time of his death.

The libelant's intestate and two other stevedores, Valentine and Saxon by name, were sent by one Snyder, who appears to have been in an executive capacity with the Logue Stevedoring Company, to assist the captain in covering the open hatch of the unloaded canal barge Hope owned by the respondent at the foot of Columbia street, Brooklyn. These stevedores testified concerning, and the respondent made no contradiction of, a custom under which the captain of a barge opens and closes his hatches. The stevedores testified that at the arrival of the Hope they found the hatch covers laid on the deck at intervals, two or three high. The sections of the cover are numbered and the captain ordinarily indicates the place where each section is to be placed.

When the men arrived, the captain and Valentine proceeded to work together and the libelant's intestate and Saxon worked as a pair. In obedience to the captain's directions, the decedent and Saxon started at the aft or cabin end. Each section of the hatch cover has grooves to set in the coaming and on the ridge pole or strong back. When the decedent and Saxon had reached the placing of the third or fourth hatch cover, Valentine, who was working with the captain on the other side of the boat, and at the same section, was heard to say: "It does not fit so good" (referring to the third section of the hatch cover), and the captain said: "It's perfectly all right."

In any event, Valentine and the captain immediately thereafter proceeded to the bow of the boat, and the decedent, in the course of setting the fourth section on his side, climbed the cabin and onto the ridge pole, and the third section, which had been set by the captain and Valentine, gave way, whereby he was precipitated to the hold and was killed.

These facts are not seriously disputed, for the captain of the barge admitted directing the men on both direct and cross examination. The only question is: Who was the master of the barge at the time of decedent's death? For whom was the decedent working? Whose business was he prosecuting? For, that his death was occasioned by negligence of the bargee, and without contributory negligence of his own, and that he was at the time of the accident working for and under the bargee's direction I have no doubt. A time charter of a barge with a man in charge is a demise of the barge, Bushey & Sons v. Hedger & Co. (C.C.A.) 40 F.(2d) 417, but as to matters involving the care or the internal economy of the vessel, not of the bargee, who remains the agent and servant of the owner in such matters. Dailey v. Carroll (C.C.A.) 248 F. 466; The Cary Brick Co. No. 8 (D.C.) 34 F.(2d) 981; Schoonmaker-Conners Co., Inc., v. Rosoff Engineering Co., Inc., (C.C.A.) 10 F.(2d) 64; The Stella (D.C.) 243 F. 216; The Fred E. Hasler (C.C.A.) 55 F.(2d) 919. Here the unloading was completed, and covering the hatches to avoid inundation or even wetting by rain, wave, tide, or the elements was as necessary to keep her seaworthy as pumping which is the master's duty admittedly. Even a scrap-iron cargo is covered in the hatch as the bargee testified, not to preserve scrap iron, surely of all cargoes, since it would

but rust, but to preserve the vessel seaworthy and cargoworthy, and that is the duty of the master.

I direct a decree for the libelant.

The capital value of an annuity of $10 a week, which is a joint annuity of a wife thirty-nine years of age and a husband fifty-six years of age, is calculated as of October 20, 1931, at the sum of $5,017.58.

██ I award $5,000 as damages, and direct the entry of a decree in the libelant's favor in that amount.