## HARBOR TOWBOAT CO., Inc., et al. v. LOWE, Deputy Com'r of U. S. Employees Compensation Commission.

### No. 467.

District Court, N. D. New York.

May 25, 1940.

Brown & Gallagher, of Albany, N. Y. (Alexander, Ash & Jones, of New York City, of counsel), for libellants.

Ralph L. Emmons, U. S. Atty., of Binghamton, N. Y. (B. Fitch Tompkins, Asst.

U. S. Atty., of Syracuse, N. Y., of counsel), for respondent.

E. C. Sherwood, of New York City (Frederic J. Locker, of New York City, of counsel), amicus curiae.

COOPER, District Judge.

George A. Gipson, then captain of the Barge "E. A. Leach," was injured while acting as such on the barge on the 25th day of July, 1938, at or near Lock 7 of the State Barge Canal in Saratoga County. He filed claim for compensation with the Deputy Commissioner for the Second District. Upon due notice to all the necessary parties the Deputy Commissioner held a hearing and found that Gipson was an employee of the Harbor Towboat Company and directed that the Harbor Towboat Company and its insurer carrier, the (American) Lumbermens' Mutual Casualty Company pay him compensation under the statute. The amount of the award was $208.86.

Thereupon the Harbor Towboat Company and its insurer carrier brought this action in this Court in the form of Libel in Admiralty for an injunction to restrain and enjoin the Deputy Commissioner from enforcing his order of award and to set the award aside.

The action is brought under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950—Navigation and Navigable Waters.

The ground of the action was that order of award of the Deputy Commissioner was not in accordance with law because of the errors therein enumerated in the libel.

It is agreed by all parties that the one question here is whether or not the Deputy Commissioner erred in finding that Gipson was an employee of the Harbor Towboat Company.

■ It is settled that the Courts cannot interfere with or set aside the decision of the Deputy Commissioner under the Act, if there has been a proper hearing and sufficient evidence exists to sustain his finding. Lumber Mutual Casualty Insurance Company v. Locke, 2 Cir., 60 F.2d 35; Pacific Emp. Ins. Co. v. Pillsbury, 9 Cir., 61 F.2d 101; Independent Pier Company v. Norton, 3 Cir., 54 F.2d 734; Voehl v. Indemnity Insurance Company of N. A., 288 U. S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L. R. 245; Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229; South Chicago, Coal & Dock Company v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 decided by the U. S. Supreme Court February 26, 1940.

The libellant here does not dispute but that such is the law, but asserts that under the facts shown at the hearing, the claimant as a matter of law, at the time of the accident was the employee servant of the New York Marine Company, the owner of the barge "E. A. Leach" and that said company and its insurance carrier, are, therefore, liable to claimant for payment of compensation to him.

The parties stipulated to the following facts at the opening of the hearing before the Deputy Commissioner: "* * * that the barge "E. A. Leach" was the property of the New York Marine Company; that prior to June 9th, 1938, the injured claimant Gipson, had been in the employ of the New York Marine Company as a laborer about their yard; that the barge "E. A. Leach" was chartered by the New York Marine Company to the Harbor Towboat Company and that the claimant, Gipson, went with the barge as captain thereof on June 9, 1938, that Gipson was paid for his services as barge captain by checks of the charterer, the Harbor Towboat Company; and that on the same day, to wit, June 9, 1938, the barge was chartered by the Harbor Towboat Company to the Cargo Carriers Inc. and that the claimant went with it under the latter charter."

The findings of the Deputy Commissioner on the subject of employment are as follows: "That preceding June 8, 1938, claimant above named was employed by the New York Marine Company as watchman of the Barge 'E. A. Lynch' which was then in an idle status, awaiting cargo; that on June 8, 1938, the New York Marine Company chartered the said barge to the Harbor Towboat Company; that Thomas S. Dwyer is the president, and John R. Dwyer, vice-President of the Harbor Towboat Company; that the New York Marine Company notified the claimant that he was to go with the barge when chartered, as its captain, and that when it entered the 'Dwyer Service' his wages would be paid by the charterer; that the claimant acquiesced in the transfer of his service and employment from the New York Marine Company to the 'Dwyer Service'; that on June 9, 1938, unbeknownst to the claimant, the Harbor Towboat Company chartered the barge to the Cargo Carriers Inc.; that

by the terms of the said charter it was stipulated and agreed that the Harbor Towboat Company 'shall provide and pay for all provisions and wages of the crew and all necessary supplies to operate the vessel * * *.' That during the entire period of his employment as captain of the barge, the claimant was paid his wages by check of the Harbor Towboat Company, which checks bore the signatures of Thomas S. and John R. Dwyer; that from June 8, 1938, claimant was in the employ of the Harbor Towboat Company."

The libellants assert, in support of their contention that Gipson was the employee of the New York Marine Company, these things: "(a) That the claimant, the barge captain, Gipson, was employed and appointed by the owner of the barge "E. A. Leach", namely the New York Marine Company, as captain of the barge and to go with it on its charter to the Harbor Towboat Company; (b) that the payment of his wages by checks of the charterer, the Harbor Towboat Company, were advances for the account of the owner out of the Charter hire and that such payments were, therefore, actually made by the owner of the barge, the New York Marine Company; (c) that although the barge "E. A. Leach" under the second charter to the Cargo Carriers, Inc., became a part of a fleet of such boats propelled by a tug, and that in the navigation of the fleet the claimant barge captain received instructions from the tug captain, that the injured claimant, the barge captain, Gipson, was under the control of the owner of the barge, New York Marine Company, and subject to be discharged only by said owner of the barge who had hired him."

█ A charter of such a barge with captain is a demise of the boat to the charterer and the captain remains the agent and employee of the owner. Zabriskie v. City of New York, D.C., 160 F. 235; Hastorf v. F. R. Long-W. G. Broadhurst Company, 2 Cir., 239 F. 852; Dailey v. Carroll, 2 Cir., 248 F. 466; Schoonmaker-Conners Company v. Rosoff Engineering Company, 2 Cir., 10 F.2d 64; Calhoun v. Daly, D.C., 18 F.Supp. 1005; Price v. Long Dock Company, D.C., 23 F.Supp. 501. The Cary Brick Company No. 8, 2 Cir., 34 F. 2d 981.

Respondent urges that most of these are negligence cases and not compensation cases.

But that is immaterial for these cases declare the law that when a boat is chartered with the captain hired by the owner and going with the boat, as here, the captain is at all times the employee of the owner.

█ That this rule is controlling on the New York Barge Canal as well as in New York Harbor is held by Bushey & Sons v. W. E. Hedger & Co., 2 Cir., 40 F.2d 417.

The respondents rely upon various facts shown in the record to take this case out of this rule and thereby support the decision of the Deputy Commissioner.

█ The fact most strenuously urged is that the respondent Harbor Towboat Company paid the wages of Gipson, paid the captain of the other barge chartered from the New York Marine Company (Ida Flannery), and paid the wages of the Captain and crew of tugboat "Southern Cross" also at the same time chartered from the New York Marine Company and further that the respondent Harbor Towboat Company also paid for rope etc. used by the "E. A. Leach" while in service under the charter.

That the Harbor Towboat Company did pay these wages and provide this rope etc. is conceded.

But it is clear that such payments were made and supplies furnished as agent of the N. Y. Marine Company for it appears by the undisputed evidence that the N. Y. Marine Company was in financial straits and on the verge of bankruptcy and in the charter arrangement it was agreed that the Harbor Towboat Company should pay these wages of Gipson and furnish these supplies and deduct the same for the charter hire of $12 per day.

It also appears by exhibit B, the statement of charter hire and to about the time of the accident, that the wages of Gipson and the supplies were deducted from the daily charter hire.

There can be no doubt, therefore, that the wages of Gipson were paid by the respondent Harbor Towboat Company for the owner New York Marine Company and not for its own account.

The testimony by the claimant Gipson that Flower, the Marine Superintendent of the New York Marine Company, "told him he was going into Dwyer (Harbor Towboat Company) Service, that Dwyer (Harbor Towboat Company) would pay his

wages and that New York Marine Company would not have anything else to do with it," is in no wise inconsistent with the charter arrangement that Harbor Towboat Company would pay Gipson his wages, for that was the agreement.

Flower did not need to explain to Gipson that such payment by Harbor Towboat Company was as agent and for the account of New York Marine Company. That the boat was going into Dwyer Service was, of course, the essential element of the charter demise; that New York Marine Company would not have anything else to do with "it" meant merely that the barge under the charter would perform service exclusively for the charterer (Harbor Towboat Company or Dwyer Service) and, of course, the New York Marine Company would have nothing to do with the service to which the Harbor Towboat Company put "it", the barge.

In like manner the advance of $10 on his wages by Dwyer to Gipson is utterly immaterial.

When Gipson became sick and had to leave Dwyer said to him "That is all right, when you come back your job will be waiting for you." That was good Samaritan conduct by Dwyer but has no bearing and cannot change the law that Gipson was in the employ of U. S. Marine Company and not of Dwyer (Harbor Towboat Company).

No representative of New York Marine Company was present or had knowledge of such conversation. Likewise any representation by Harbor Towboat Company to its insurance carrier may have been routine, customary or required by the insurance carrier but it had no legal effect to change the charter hiring and the law that the captain going with the boat was the agent of the owner.

Mr. Dwyer was sworn as a witness by the libellant Lumberman's Mutual Casualty Company and testified that he had been 22 years in the business (chartering and operating barges, tows etc.) and that the practice of discharging an unsatisfactory captain who came with a chartered barge was to notify the owner and tell the owner to replace such captain with another man. True he was perhaps an interested witness, but his testimony is undisputed.

■ It is not material what the crew members, or even Gipson, understood as to what concern they were working for.

Their understanding cannot change the law.

Thomas Hull, captain of the tug "Southern Cross" also included with the barge "E. A. Leach" in the charter from the New York Marine to Harbor Towboat Company had no such understanding for he testified that he was paid by the Harbor Towboat Company but that his employer was Mr. Narelle of the N. Y. Marine Co. (Rec. 193, 194).

Mr. Narelle was not sworn as a witness.

The Deputy Commissioner found that on June 9, 1938, the day after the June 8th charter from New York Marine to Harbor Towboat Company, the latter entered into a further charter, or sub-charter, of the same fleet and boats to Cargo Carriers, Inc., by the terms of which the Harbor Towboat Company "shall provide and pay the wages of the crew and all necessary supplies to operate the vessel" (E. A. Leach).

During all the time the boats operated under such sub-charter, the claimant was paid by the Harbor Towboat Company.

There is nothing in this inconsistent with the charter demise of the barge "E. A. Leach" by the New York Marine Company to the Harbor Towboat Company, for it appears by undisputed evidence as shown, that Harbor Towboat Company agreed to pay claimants wages (and certain others) and to deduct the same from the $12 per day charter hire and actually did so.

Moreover, no contract by charter or otherwise, which the Harbor Towboat Company could make with any third person could in any way whatever change its charter contract with the N. Y. Marine Company without the consent of the latter and no consent to such charter or knowledge thereof, at least for some time, was shown on the part of the New York Marine Company.

The Deputy Commissioner found that "the claimant acquiesced in the transfer of his service and employment from the N. Y. Marine Company to the "Dwyer" service.

Apparently this means that such transfer and consent took place on June 8, 1938, the day the charter arrangement was made.

■ There is no evidence whatever of any such transfer of the services of Gipson from N. Y. Marine except the unwar-

ranted inference from the statement of Flower that he was to go with the boat, that Harbor Towboat Company would pay his wages and that New York Marine would not have anything else to do with it, coupled with the fact that Gipson continued on the barge and was paid by Dwyer (Harbor Towboat Company.)

As has been shown the charter arrangement from New York Marine Company to Harbor Towboat Company provided that Harbor should pay the wages and charge against the daily charter hire.

There was no transfer of claimant's services and he consented to nothing.

Moreover, he could not consent to anything which would change the terms of the charter from the New York Marine Company to the Harbor Towboat Company. He was a stranger to that charter and nothing he could do would have the slightest legal effect upon that charter or upon the rights and obligations of the parties thereto.

There is no evidence whatever, viewed in the light of the actual charter arrangement between the New York Marine Company and the Harbor Towboat Company and its legal effect, to support the Deputy Commissioners finding that the claimant Gipson was an employee of Harbor Towboat Company.

The decision, therefore, is that injunction as prayed for by the complaint is granted.