Donald L. **REICHERT**, Claimant-
Respondent,

v.

**JERRY REECE, INC.,** and Bituminous Cas-
ualty Corporation, Employer-
Insurer-Respondent,

and

Sam Tanksley Trucking, Inc., and Medallion
Insurance Company, Employer-
Insurer-Appellant.

No. 9498.

Missouri Court of Appeals,
Springfield District.

Dec. 18, 1973.

James R. Reynolds, Wendell W. Crow, Ford, Ford & Crow, Kennett, for claimant-respondent.

Byron D. Luber, Ward & Reeves, Caruthersville, for Reece and Bituminous, employer-insurer-respondent.

Richard D. Jones, Oliver, Oliver & Jones, Cape Girardeau, for Tanksley and Medallion, employer-insurer-appellant.

TITUS, Chief Judge.

The multipartite question is: Was claimant (for the purposes of workmen's compensation benefits) the "employee"[1] of Jerry Reece, Inc. (Reece), or Sam Tanksley Trucking, Inc. (Tanksley), or both, when he sustained an accidental injury on March 31, 1969, and, if he was an employee of Tanksley, is Tanksley relieved of liability under §§ 287.420 and 287.430, or both?[2] The Division of Workmen's Compensation concluded Tanksley was the sole employer with no outs under the foregoing sections. In turn, the Industrial Commission and the Circuit Court of Pemiscot County agreed. Tanksley appealed.

By written contract for a rental of "29% on the gross freight on each load,"[3] Reece leased its 1967 International tractor-truck to Tanksley for one year commencing July 1, 1968. Reece agreed to pay the wages of the drivers, "all social security and payroll deductions required by law, workmen's compensation," and to furnish the fuel, oil, tires "and any and all supplies and repairs needed to keep said equipment up to the minimum operating efficiency." The lease also recited "that the drivers . . . used by Lessor to fulfill this contract are not to be construed . . . to be the employees . . . of Lessee and that the relationship of Lessor to Lessee is that of an independent contractor, and . . . that said Lessor will personally assume full responsibility and take such action that is necessary to save said Lessee harmless from any damage that might occur for any reason to said equipment, drivers, helpers, employees or agents of said Lessor." According to Reece, it was understood that Tanksley "was to furnish the trailer and the loads, the licenses, permits, and everything," except the items previously enumerated as being Reece's responsibility.[4]

On Christmas Day 1968, claimant inquired of Reece "about driving one of his

1. "Employee" is defined i nthe Missouri Workmen's Compensation Law as "every person in the service of any employer, . . . , under any contract of hire, express or implied, oral or written, or under any appointment or election. . . ." § 287.020, subd. 1.

2. Statutory references are to RSMo 1969, V.A.M.S.

3. As written, the lease evidences frequent confusion in the use of the terms "lessor" and "lessee." Contrary to the rental recited, the evidence was that Tanksley actually paid Reece 71% (not 29%) of the gross on each load which "was to pay for my fuel [for] the tractor, the wear and tear and the driver."

4. Our references to Reece and Tanksley also include their insurers. § 287.030, subd. 2.

trucks." Reece said that "if it was all right with Mr. Tanksley it was all right with him." However, Reece could not assure claimant when he would start driving because "it was up to Tanksley to hire the man" and claimant "had to clear through the application and physical." Claimant secured a physical examination and delivered the report thereof to Tanksley; he also obtained from and filed with Tanksley his application form for employment. After claimant started driving, all of his dispatching was made by Tanksley who told him "where to go and when to go [and] where the load is and when I am supposed to pick it up [and] where it goes." Perishables were transported in Tanksley's trailers (propelled by the leased truck), and Tanksley instructed claimant "what temperature to put on them." Claimant talked to Tanksley by telephone "[j]ust about every day . . . to let him know everything was okay and I was on schedule and if I was unloaded he would give me my pickups." Reece agreed that he had "no control where this truck was to go and how it was to go and when it was to get back;" in fact, Reece only saw the truck "when it happened to be through this end of the country," and the instructions given claimant by Reece regarding the truck, were limited to "the service of it, told him how often to service it." Either Reece or Tanksley could have fired claimant. On the particular trip when the accident in question occurred, Tanksley had sent claimant to California; he had secured a load there and in Arizona and was dispatched by Tanksley to deliver it in Ohio. While traveling through Indiana enroute to the intended destination, the tractor-trailer unit ran off the highway and over an embankment. The nature and extent of claimant's injuries are not disputed, and although they were received outside of this state, it is agreed the Missouri act applies because the contract of employment (with whomever) was made in this state. § 287.-110, subd. 2.

I

Opinions concerned with the general-employer-special-employer problem under an equipment lease agreement, oft times become preoccupied with the employee's understanding as to the identity of his employer and flail the written contract until each kernel has been thoroughly floured and explained. We eschew such an undertaking because, as between the employee and the employers, such considerations have little, if any, importance. It is immaterial for whom claimant opined he was working since his understanding cannot change the true facts or the law. Harbor Towboat Co. v. Lowe, 47 F.Supp. 454, 457[5] (D.C.N.Y.1940). Commitments of an agreement are limited to the parties thereto [Kahn v. Prahl, 414 S.W.2d 269, 278[3] (Mo.1967)] and contractual obligations cannot be imposed upon a stranger to an agreement, especially when the contract is one for services. Johnson v. Coleman, 288 S.W.2d 348, 349[2] (Ky.1956); 17 Am.Jur.2d, Contracts, § 294, pp. 710–711. Moreover, irrespective of undertakings by agreement to classify drivers paid by the lessor as unqualified employees of the lessor or as employees of an independent contractor, descriptive nomenclature is never determinative, controlling or binding (particularly as to workmen who are strangers to the contract) if there is evidence to deny it in fact or if the assumed relationship be destroyed by the actual facts and circumstances through the conduct of the parties. Talley v. Bowen Construction Company, 340 S.W.2d 701, 705[5] (Mo.1960); Frank v. Sinclair Refining Co., 363 Mo. 1054, 1062, 256 S.W.2d 793, 797[5] (1953); Ozan Lumber Co. v. McNeely, 214 Ark. 657, 217 S.W.2d 341, 343[3] (1949).

It has been said that "[t]he governing principle of 'servant loaned or hired to another' (58 Am.Jur. 'Workmen's Compensation' Sec. 343, p. 812) is summarized in this applicable language: 'When a general employer lends an employee to a spe-

cial employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work.' 1 Larson, Workmen's Compensation, Sec. 48, p. 805." Dickhaut v. Bilyeu Refrigerated Transport Corp., 441 S.W.2d 54, 57[2] (Mo.1969). Albeit this pronouncement may suffice to resolve the particular circumstances presented in the opinions which recite it, we doubt the complete accuracy of the requirement that " '(a) the employee has made a contract of hire, express or implied, with the special employer.' " It was early recognized that the Missouri act, by reason of its definition of "employee" (note 1, supra), "includes every person 'in the service of any employer' and is not confined to those 'under any contract of hire,' express or implied, but also includes those performing service by 'appointment or election.' " Pruitt v. Harker, 328 Mo. 1200, 1210, 43 S.W.2d 769, 772–773 (1931). Thus a person may be an "employee," or more accurately a "workman," under the Missouri workmen's compensation law "either (1) because of any contract of hire or (2) because of any appointment or election." Fielder v. Production Credit Association, 429 S.W.2d 307, 314 (Mo.App.1968). We usually envision the payment of wages or compensation as incident to an employer-employee relationship if predicated upon a contract for hire, but the relationship, especially because of any appointment or election, may exist notwithstanding the fact that the servant neither expects nor is entitled to compensation from the particular employer for whom he is rendering service. Lawson v. Lawson, 415 S.W.2d 313, 319[6] (Mo.App.1967). Consequently, although the only contract for hire shown by the evidence may be between the workman and his general employer (Reece), the existence of a contract of hire with the claimant was not a prerequisite to the investiture of Tanksley (lessee) with the rank of special employer as that may be accomplished "under any appointment or election." § 287.020, subd. 1, supra; Feldmann v. Dot Delivery Service, 425 S.W.2d 491, 497[3] (Mo.App.1968).

In the instant case, the fact that Reece, as lessor and general employer, paid claimant's wages, retained the right to discharge (a right shared with Tanksley), kept the leased equipment in repair and paid for its operation, would not prevent claimant from becoming a workman for Tanksley as his special employer. McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 346, 153 S.W.2d 67, 68, 136 A.L.R. 516, 518 (1941); Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 979–980, 162 S.W.2d 628, 634 (1942). The principal question is not whether claimant remained the servant of Reece as to matters generally, but whether, when the accident occurred, he was performing services essentially for Tanksley which Tanksley had the right to control or direct. Patton v. Patton, 308 S.W.2d 739, 747 (Mo.1958). The evidence clearly shows that when claimant sought employment from Reece it was understood his commencing work was conditioned upon Tanksley's approval and that he would be dispatched by Tanksley. Also, from the beginning, after his employment was cleared through Tanksley, claimant reported to Tanksley regularly and not only consented to but did follow Tanksley's instructions as to when and where to go, what loads to pick up, where to make deliveries, and what temperatures to keep on the loads. Admittedly, Reece had no authority to direct these services. Hauling perishables was Tanksley's business, not that of Reece, and what Reece undertook by his contract with Tanksley was to simply provide additional facilities with which Tanksley could conduct its operations. It was while claimant was performing services for Tanksley within the course and scope of Tanksley's business and under the direction of Tanksley that the accident occurred and he was injured. Under such conditions the Industrial Commission rea-

sonably could have found that claimant either made a contract of hire with Tanksley or entered into its services by appointment or election, that the work being done by claimant was essentially that of Tanksley, and that Tanksley had the right to control the details of claimant's work. Bradshaw v. Richardson Trucks, Inc., 467 S.W.2d 945, 947 (Mo. banc 1971). Therefore, we, as the reviewing court, may not properly disturb such findings [Brown v. Missouri Lumber Transports, Inc., 456 S.W.2d 306, 307 (Mo.1970)] nor hold wrong the commission's conclusion that Tanksley was solely responsible to claimant for workmen's compensation benefits.

II

In its brief here, Tanksley complains that the claimant did not provide written notice to it as required by § 287.420, that no finding was made by the commission or division that Tanksley was not prejudiced by the failure, and that the award against Tanksley was in error because the claim for compensation against it was not filed within the time prescribed by § 287.430.

Mr. Reece testified that on the morning of the accident Sam "Tanksley had left word for me to call him." When the call was returned, Tanksley told Reece "the truck [had] run off the road and turned over." When Reece "went up there [to Tanksley's office] we tried to get a hold of [claimant] and [were] unable to. We got a hold of the State Police in the meantime and they told me." When asked: "Did Mr. Tanksley at the time you were there at East Prairie on the date of the accident, did both of you have knowledge that [claimant] was hurt and injured?", Mr. Reece (without objection) answered: "Yes, sir." There was no contradictory evidence.

The first fault to be found in Tanksley's complaint anent the written notice is that neither the text of § 287.420[5] nor the decisions construing it require *the claimant himself,* i. e., the injured employee, to give written notice of injury to the employer as a precondition to maintaining a claim for compensation. Snow v. Hicks Bros. Chevrolet, Inc., 480 S.W.2d 97, 101[4] (Mo.App.1972). An injured employee may maintain his claim in the absence of such a written notice if the commission finds there was good cause for its failure *or* that the employer was not prejudiced by failure to receive it. Beatty v. Chandeysson Electric Co., 238 Mo.App. 868, 878[4], 190 S.W.2d 648, 653[4] (1945). The purpose of the notice is to enable the employer to protect himself by prompt investigation of the accident and treatment of the injury, which purpose is as effectively accomplished when an employer gains actual, timely knowledge of a potentially compensable injury as when he is given formal written notice of it. Lawson v. Vendo Company, 353 S.W.2d 113, 117 (Mo.App.1961). When the claimant, as here, shows that the employer had actual notice or knowledge of the injury, he has constructed a prima facie showing of want of prejudice, and thereupon the burden shifts to the employer to prove that, in spite of actual knowledge, he was nevertheless prejudiced by not having received a written notice. Brown v. Douglas Candy Company, 277 S.W.2d 657, 663 (Mo.App. 1955). The failure of Tanksley to dispute this prima facie showing rendered the issue one of fact for decision by the commission. While, as Tanksley asserts, neither the division nor the commission made a

5. Sec. 287.420—"No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident, unless the division or the commission finds that there was good cause for failure to give the notice, or that the employer was not prejudiced by failure to receive such notice. No defect or inaccuracy in the notice shall invalidate it unless the commission finds that the employer was in fact misled and prejudiced thereby. As amended Laws 1965, p. 397, § 1."

specific finding that no prejudice existed as a result of no written notice, there was a finding that "the special employer had notice of the injury." Where the commission renders a general award in favor of the claimant, such a general finding necessarily implies the finding of every fact necessary to support it, including that of good cause or lack of prejudice under § 287.420. Klopstein v. Schroll House Moving Co., 425 S.W.2d 498, 505[10] (Mo. App.1968). Furthermore, Tanksley is not now in a position to complain that specific findings were not made on such issues because it never required the division nor the commission to include such findings. This criticism comes too late on appeal. Jones v. Remington Arms Co., 209 S.W.2d 156, 162 (Mo.App.1948).

We finally reach Tanksley's asseveration that the claim for compensation is barred as to it because of the statute of limitations, § 287.430.[6] As heretofore noted, the accident occurred March 31, 1969, and on that date both Reece and Tanksley had knowledge of the incident and the fact claimant had been injured by the casualty. A report of injury, as required by § 287.380, subd. 1,[7] was not filed by Reece until September 3, 1970; no such report was ever filed by Tanksley. Reece's insurer paid (it claims by mistake) 13 weeks of temporary total disability compensation with the last payment being made on June 20, 1969. The commission found that Reece and its insurer had furnished medical aid in the sum of $1,494.20 and, according to the evidence, the last medical treatment so furnished was on December 1, 1970. Claimant's claim for compensation was filed with the division on March 4, 1971; it named Reece and Tanksley as the employers.

[9] We have set out §§ 287.380, subd. 1, 287.420 and 287.430 in extenso in notes 5, 6 and 7 herein. These must be considered in pari materia, and in so reading all three sections, "the uniform and consistent legislative purpose we discern—to the extent that it bears on the question presented—is that although an employer is entitled to timely notice of a potentially compensable injury [§ 287.420], such notice need not be given by the employee himself, and if an employer with knowledge of such an injury fails to make report of injury [§ 287.380-1], such neglect tolls the running of the statute of limitations [§ 287.430] in favor of the employee." Snow v. Hicks Bros. Chevrolet, Inc., supra, 480 S.W.2d at 102[9] and 103 [12-14]. It will be seen that § 287.380, subd. 1 requires *every employer* to notify the division of an accident resulting in personal injury to an employee after obtaining knowledge thereof, and that § 287.430 (as interpreted by *Snow*) serves to toll the running of the statute of limitation until

6. Sec. 287.430—"No proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within one year after the injury or death, or in case payments have been made on account of the injury or death, within one year from the date of the last payment, or in cases where the employee has filed the notice required by section 287.420, the claim may be filed within one year after the filing by the employer of the report of injury or death as required by section 287.380. The filing of any form, report, receipt, or agreement, other than a claim for compensation, shall not toll the running of the one year period provided in this section. In all other respects the limitations shall be governed by the law of civil actions other than for the recovery of real property, but the appointment of a guardian shall be deemed the termination of legal disability from minority or insanity. As amended Laws 1965, p. 397, § 1. Laws 1965, p. 419, § 1."

7. Sec. 287.380, subd. 1—"Every employer in this state, whether he has accepted or rejected the provisions of this chapter, shall within ten days after knowledge of an accident resulting in personal injury to an employee, notify the division thereof, and shall, within one month, file with the division under such rules and regulations and in such form and detail as the division may require, a full and complete report of every injury or death to any employee for which the employer would be liable to furnish medical aid or compensation hereunder had he accepted this chapter, and every employer shall also furnish the division with such supplemental reports in regard thereto as the division shall require."

such notice has been filed. The notice statute (§ 287.380, subd. 1) does not specify that the report must be made by only the general employer, if more than one employer is involved, but includes *every employer* irrespective of the particular classification he may possess and whether or not he has rejected or accepted the provisions of the workmen's compensation act. Ergo, after having actual information of the accident and injury, Tanksley's failure to file a report of injury with the division would toll the limitation imposed by § 287.430 and force the conclusion that the claim was timely made.

A determination that the formal claim was timely filed against Tanksley need not rest solely upon the foregoing. Such a claim is timely if filed within one year from the date of the last payment "made on account of the injury" (§ 287.-430), and if an employer, as required by § 287.140, provides medical treatment or aid, the rendition thereof constitutes a payment on account of the injury. Morgan v. Krey Packing Company, 403 S.W.2d 668, 670[1] (Mo.App.1966). As already observed, the last medical treatment or aid was furnished December 1, 1970, and the claim was filed less than four months thereafter. This is not disputed by Tanksley. However, it strongly urges that it cannot be bound by anything done by Reece and its insurer and that since Reece provided the medical treatment, this cannot serve to extend the time for filing a claim for compensation against Tanksley. In view of Smith v. Home Building Contractors, Inc., 363 S.W.2d 11 (Mo.App.1962), we cannot accede to Tanksley's position. Claimant in *Smith* was in the general employ of Contractors and, at the time of the accident and injury, was the loaned employee of Milrey. He filed no claim until more than one year after the accident. Milrey, the special employer, asserted the claim as to it was barred by § 287.430 and that the furnishing of medical aid by Contractors, the general employer, would not suspend the statute on any claim made against Milrey. The court ruled against Milrey and held that the statute runs from *any* last payment made on account of the injury and not merely from the last payment, if any, by the party sought to be joined in the proceedings. The ruling in *Smith* is not dissimilar to Grant v. Neal, 381 S.W.2d 838, 840–841 [4] (Mo.1964) which determined that although claimant had not filed a claim against the second injury fund (§ 287.220) within one year of the accident, the claim was, nevertheless, timely because the statute was tolled by the medical treatment or aid which had been provided by the employer less than a year before the claim was made against the fund.

The judgment nisi is affirmed.

STONE, and BILLINGS, JJ., and FLAKE L. McHANEY, Special Judge, concur.

HOGAN, J., not sitting.