Debra M. STONE, on Behalf of her son, Israel Seth STONE, son of Paul Stone, Jr., Deceased, Respondent,

v.

Bill HEISTEN, Sr., d/b/a Hickory Hills Diesel, Appellant.

No. 16233.

Missouri Court of Appeals, Southern District, Division One.

Sept. 28, 1989.

James R. Spradling, Carthage, for appellant.

Karenanne Miller, Springfield, for respondent.

HOLSTEIN, Chief Judge.

This is an appeal of a workers' compensation claim. The claim was brought on behalf of the sole surviving minor child of Paul Stone, Jr., deceased. Claimant's decedent was killed in a truck accident in Texas on November 11, 1984. The Labor and Industrial Relations Commission (Commission) affirmed an award of the administrative law judge. The administrative law judge found that at the time of the fatal accident, Paul Stone, Jr. was an employee of HTL, Inc. and Bill Heisten, Sr., d/b/a Hickory Hills Diesel.

Bill Heisten, Sr. appeals claiming alternatively that (1) decedent was solely employed by HTL, (2) decedent was employed by William Heisten II, d/b/a "II Trucking," and (3) decedent was not an employee of Bill Heisten, Sr. for more than five and one-half days at the time of his death and, therefore, was not an employee under the workers' compensation law.

Each claim of error by appellant is an assault on factual findings essential to the award of compensation. Appellate review is circumscribed by § 287.495.[1] The award of the Commission may only be overturned if unsupported by substantial evidence or when it is clearly contrary to the overwhelming weight of the evidence. *Johnson v. City of Duenweg Fire Dept.*, 735 S.W.2d 364, 366 (Mo. banc 1987). This court views the record in a light most favorable to the Commission's findings to determine whether the Commission could reasonably have made the findings and award. *Id.* We are not to substitute our judgment for that of the Commission on fact questions, and conflicts in the evidence are for resolution by the Commission. *Jordan v. D & L Custom Wood Products*, 767 S.W.2d 378, 380 (Mo.App.1989). The Commission is the sole judge of the weight of the evidence and the credibility of the witnesses. *Id.*

Sometime in February of 1984, Paul Stone answered an advertisement in a Springfield newspaper for a truck driving position. He went to Bill Heisten, Sr.'s place of business in Carthage where he filled out an employment application. Bill Heisten, Sr. reviewed the application to make sure it was complete. The papers were then forwarded to HTL, Inc. who made the final determination as to whether Stone would be hired. Apparently, HTL would check a driver's references prior to granting their approval.

---

1. References to statutes are to RSMo 1986.

On February 15, 1984, Bill Heisten, Sr., d/b/a Hickory Hills Diesel, entered into a contract with Paul Stone under which Stone was to operate trucks leased to "Hilt Truck Line."[2] An almost identical contract was signed by Paul Stone on March 13, 1984. The only difference was that the owner of the trucks was described as "William R. Heisten II, d/b/a II Trucking, and/or Sharon D. Heisten." The contract was signed by Sharon D. Heisten purporting to act as agent for William R. Heisten II. In March of 1984, William R. Heisten II was the seventeen year old son of Bill Heisten, Sr. and Sharon D. Heisten. The younger Heisten became eighteen years of age in June of that year.

In 1984 Bill Heisten, Sr. and Sharon Heisten owned several trucks which they leased exclusively to HTL. Paul Stone drove unit 736 during the months of February and March of 1984. Thereafter he began driving unit 209. Unit 736 was titled in the name of Bill Heisten, Sr. Unit 209 was titled in the name of Sharon D. Heisten. The unit 209 lease was signed by Bill Heisten, Sr. pursuant to Sharon's power of attorney.

According to the Heistens, William Heisten II was the owner of the entity known as "II Trucking." However, both Bill Heisten, Sr. and William Heisten II did business out of the same location and shared the same phone number and phone which was always answered, "Hickory Hills Diesel." The phone book listing was under Hickory Hills Diesel. Sharon Heisten acted as bookkeeper for both businesses. Bill Heisten, Sr. was the person who received phone calls regarding Stone's performance of his duties with HTL. HTL's manager never heard of II Trucking until after Stone's death.

The Heistens had contracts with various drivers to drive the trucks leased to HTL. Under their contracts with the drivers, the Heistens were free to discharge a driver. Drivers reported illness and mechanical failures to the Heistens. The drivers were responsible to both the Heistens and HTL to see that loads were picked up and delivered. HTL dispatched the Heistens' drivers and told the drivers when and where to pick up and deliver loads. On occasion drivers were fired at the direction of HTL. HTL would provide pay advances to drivers, but only after receiving the approval of the Heistens.

On about November 2, 1984, unit 209 "blew an engine" while Stone was driving it in the State of Maryland. The information was communicated to HTL and Bill Heisten, Sr. A wrecker service was dispatched to deliver unit 668 to Maryland and return unit 209 to Missouri. Unit 668 had previously been owned by Bill Heisten, Sr. but sold to a third party, although Bill Heisten, Sr. retained a security interest in the vehicle and had repossessed the vehicle at the time he received word of unit 209's breakdown in Maryland. Stone left Maryland driving unit 668 and arrived in Maryville, Missouri, on November 7, 1984. Stone returned to Carthage from Maryville. He then drove unit 668 to Texas where the fatal accident occurred on November 11.

On this evidence the administrative law judge found that "at the time in question the employee was employed by Hickory Hills Diesel. . . . [H]e was driving a tractor that was owned by Hickory Hills Diesel and was leased to HTL, Inc., and that since the rights of control flow with the ownership, [decedent] was in fact employed by Hickory Hills Diesel."

In support of his claim that decedent was "essentially" an employee of HTL, appellant argues that HTL is a "special employer" and that Bill Heisten, Sr. was, at most, a "general employer." His argument is that the general employer is not liable under the workers' compensation law for injuries sustained by an employee engaged in the business of the special employer. In support of this proposition, he relies primarily on *Reichert v. Jerry Reece, Inc.*, 504 S.W.2d 182 (Mo.App.1973).

---

**2.** The company known as Hilt Truck Line was no longer leasing trucks from the Heistens in early 1984, although a company by that name had previously done business with Bill Heisten, Sr. The actual corporation to whom the Heistens leased trucks was HTL Trucking, a company whose stockholders included members of the Hilt family.

In *Reichert* the evidence showed that a driver was hired by the lessor of a truck. The lessor of the vehicle dispatched the vehicle, told the driver where and when to go, what to pick up and where to make deliveries, and the temperature to be maintained on refrigeration units. On these facts this court held:

> [T]he Industrial Commission reasonably could have found that claimant either made a contract of hire with [the lessor] or entered into its services by appointment or election, that the work being done by claimant was essentially that of [the lessor], and that [the lessor] had the right to control the details of claimant's work.

*Id.* at 186–87. The case did not discuss the circumstances under which two employers may be jointly liable.

Here the facts are different from *Reichert.* HTL and Bill Heisten, Sr. each had authority to hire and fire Stone. When the vehicle Stone was operating had a breakdown, when Stone became ill, when Stone's deliveries were late, or when Stone wanted a cash advance, Bill Heisten, Sr. participated in the decision of how to respond.

The employer-employee relationship rests on *service* construed judicially to mean *controllable service.* *Miller v. Hirschbach Motor Lines, Inc.,* 714 S.W.2d 652, 656 (Mo.App.1986); § 287.020.1. Perhaps the most significant factors in determining if Stone was Bill Heisten, Sr.'s employee was whether the elder Heisten had the right to control Stone's work activity and the power to fire Stone. *Cope v. House of Maret,* 729 S.W.2d 641, 643 (Mo.App.1987); *Miller v. Hirschbach Motor Lines, Inc., supra,* at 658.

■ Where an employee is subject to the control of two employers, he is not a "special" or "borrowed" servant of either, but a joint employee of both. *Hartford Accident & Indem. Co. v. Travelers Ins. Co.,* 525 S.W.2d 612, 615 (Mo.App.1975). Joint employment occurs when a single employee, under contract with two employers, and under simultaneous control of both, performs services for both employers and the services provided are the same or close-ly related to that of the other. 1C A. Larson, *The Law of Workmen's Compensation* § 48.41 (1986). Each employer is jointly and severally liable for workers' compensation. § 287.130. "Courts are showing an increasing tendency ... to dispose of close cases, not by insisting on an all-or-nothing choice between two employers both bearing a close relation to the employee, but by finding a joint employment on the theory that the employee is continuously serving both employers under the control of both." 1C A. Larson, *The Law of Workmen's Compensation* § 48.42 (1986). There is evidence that Heisten shared the authority to control and right to discharge drivers with HTL. Because the evidence supports a finding of joint employment, it will not be disturbed on appeal. The first point is denied.

■ Appellant's second point notes that an employer is one who uses the services of another "for pay." § 287.030.1(1). Essentially, his argument is that because Stone's pay came from an account titled "II Trucking," Bill Heisten, Sr. was not using Stone's services for pay.

The statute has no provision which requires that the employer be the party who actually pays the employee for his services. In this case Stone was driving unit 668, a truck provided by Bill Heisten, Sr. Bill Heisten, Sr. was paid for the use of the truck by HTL. The fact that the elder Heisten turned the money over to his son, who in turn paid Stone, does not mean that Stone was a volunteer. Stone's work was "for pay" while in the service of Bill Heisten, Sr.

■ The third point claims that Stone had only driven unit 668 for three days at the time of his death and, therefore, was not a statutory employee because he was not "employed by the same employer for more than five and one-half consecutive work days" as provided by § 287.020.6.

The issue raised was resolved in *McGuire v. Tenneco, Inc.,* 756 S.W.2d 532 (Mo. banc 1988). In that case McGuire brought a common law negligence action against Tenneco. McGuire was employed

by a temporary employment agency as a laborer. On August 8, 1986, he was designated to work for Tenneco. Upon his arrival, McGuire was assigned to sweep paper off Tenneco's floor. While sweeping McGuire was injured. *Id.* at 533. McGuire claimed not to be a statutory employee of Tenneco under the worker's compensation law because he had only been employed there for one day. The court noted that "employee" is defined in two ways by § 287.020. One definition provides that an employee is "every person in the service of any employer ... under any contract for hire...." § 287.020.1. The other definition of employee is "a person who is employed by the same employer for more than five and one-half consecutive work days...." § 287.020.6. Even though McGuire had only been employed one day, the court held that he was a statutory employee. *Id.* at 536.

Applying that holding to this case, the evidence shows that Paul Stone, Jr. was in the service of Bill Heisten, Sr. under a contract of hire at the time of Stone's death. Accordingly, Stone was a statutory employee regardless of his length of employment. The third point is denied.

The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.