Edna MILLER, Plaintiff-Respondent,

v.

HIRSCHBACH MOTOR LINES, INC.,
Defendant-Appellant,

and

Carriers Insurance Company,
Insurer, Defendant.

No. 14010.

Missouri Court of Appeals,
Southern District,
Division Two.

May 29, 1986.

Motion for Rehearing or Transfer
Denied June 18, 1986.

Application to Transfer Denied
Sept. 16, 1986.

David I. Hares, Strubinger, Dowd, Haseltine & Redmond, St. Louis, for defendant-appellant. .

Raymond E. Whiteaker, Brad J. Fisher, Thomas Y. Auner, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for plaintiff-respondent.

HOGAN, Judge.

This is a Workers' Compensation case. The claimant, Edna Miller, was driving an over-the-road tractor-trailer loaded with boxed meat. The meat was being transported from "[n]ear Sioux City" (in Iowa) to Memphis. About 7 miles southeast of West Plains, Missouri, Edna struck a cow standing in the road. The impact caused the truck to overturn and go into the ditch. Edna sustained a severe fracture of her left femur, so severe that intramedullary

pinning was eventually required. Edna was required to undergo three operations which required general anesthesia. Her treating physician testified that as of June 1983, she had some permanent loss of knee movement and that her left leg was one-half inch shorter than her right leg. This physician, a fully qualified orthopedic surgeon, rated her disability at 25 percent permanent partial disability. Edna has received an award of $26,522.28, of which $13,708.00 represents reasonable and necessary medical expense. The employer appeals.

I

*Scope of Review*

The scope of appellate review in Workers' Compensation cases has recently been stated by this court in *Page v. Green,* 686 S.W.2d 528 (Mo.App.1985), and need not be restated. However, in connection with the Administrative Law Judge's quixotic determination headed "EDNA MILLER—EMPLOYEE OF HIRSCHBACH," which is cited marginally [1] and upon which the employer relies, additional principles are to be borne in mind: Administrative agency decisions based on the agency's interpretation of law are matters for the independent judgment of the reviewing court. *King v. Laclede Gas Co.,* 648 S.W.2d 113, 114 (Mo.banc 1983); *Mo. Div. of Emp. Sec. v. Labor & Industrial Relations Commission,* 637 S.W.2d 315 (Mo.App.1982). The determination that one is an "employee" involves a question of law no less than does the determination that one has suffered an "accident." *Saxton v. St. Louis Stair Company,* 410 S.W.2d 369, 375 (Mo.App.1966). Further, the rule which has been many times stated and

---

1. "EDNA MILLER—EMPLOYEE OF HIRSCHBACH:

 It is my opinion that Edna Miller cannot be considered to be an employee of Hirschbach. The agreement between Richard Miller and Hirschbach (Claimant's Exhibit S) clearly states in Paragraph 12 that Richard Miller has the authority to hire people in order to assist him in driving. The only contacts between these drivers and Hirschbach are the required contacts as

set forth under the various federal agencies and their regulations. In considering Edna Miller's position, Hirschbach does not have the right to control her activities nor is she in the service of Hirschbach but rather Richard Miller does have the right to control and she is in the service of Richard Miller. It is my opinion that Edna Miller is not an employee of Hirschbach on this basis but rather is an employee of Richard Miller."

which is controlling in this case is that decisions of the commission which are clearly the interpretation or application of the law, as distinguished from a determination of fact, are not binding upon us and fall within our province of review and correction. *Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292, 296–97[1–7] (Mo.1965); *Williams v. Anderson Air Activities*, 319 S.W.2d 61, 65[3–5] (Mo.App. 1958). The finding that the claimant was not an "employee" of Hirschbach clearly represented an application of the law, as distinguished from a finding of fact, and hence is subject to correction by this court.

## II

### *Choice of Law*

■ This threshold observation made, it is appropriate to consider the employer's point I(B), which is that the law of Nebraska, not the law of Missouri, should be applied to the operating agreement between Richard Miller and Hirschbach Motor Lines.

The operating agreement, presented to the Commission as claimant's Exhibit "S," is before us in the record. The contract provides:

"35. This Agreement shall be governed by the laws of the State of *Nebraska* both as to interpretation and performance."

The writing itself, by the provisions of paragraph 3, plainly shows that the parties contemplated interstate transportation of commodities "subject to regulation by the Federal Government acting through the Interstate Commerce Commission and the Department of Transportation, and by various State and local governments...."

As a question of choice of law, Dean Leflar observes:

"It is understandable that at the inception of their contract the parties, particularly the employer, may wish to fix the governing law conclusively so that they can know what their rights or duties are, and so that compensation liability insurance can be taken out under the controlling state's system. To this end a clause is sometimes included in employment contracts specifying what law is to govern. Such a provision has been said to be valid, but most states give it little or no effect. Since compensation cases involve interests considerably beyond the desires of the immediate parties, the tendency is to hold that the rules for choice of law imposed by the state supersede the parties' stated intent, especially if the intent clause appears in a form contract prepared by the employer and merely acceded to by the other party."

R. Leflar, American Conflicts Law § 160, p. 330 (3d ed. 1977). Richard testified that Hirschbach prepared the "operating agreement"; there was no negotiation. The contract is nothing if not a contract of adhesion. Bearing in mind that Edna was not a party to this contract and that her status as Richard's spouse is in no event determinative of her status as an "employee," we further observe that the Restatement (Second) of Conflict of Laws deals specially with choice-of-law questions in workers' compensation cases. Restatement (Second) of Conflict of Laws §§ 181–185 (1971). Section 181 would allow the forum state to apply its own workers' compensation law if any of a number of contacts were present, including injury to the claimant in the state and domicile of the injured worker within the state. Restatement (Second) of Conflict of Laws § 181(a) and comment (b)(1). Generally, an agreement by the parties to have a particular state's law apply will not deprive another state's court of the power to apply the law of the forum "... if such application is required either by the terms of the statute or by its underlying policy." Restatement (Second) of Conflict of Laws § 181, comment a; 4 A. Larson, Workmen's Compensation Law § 87.71 (1986). Section 287.110.2, RSMo 1978,[2] in effect

---

2. References to the Workers' Compensation Law are to RSMo 1978. The substantive amendments made by Laws of Mo.1981, H.C.S. H.B. 324, were not effective until September 28, 1981. The injury was sustained and the claims for compensation were filed before that date.

when the claimant was injured, provided: "This chapter shall apply to all injuries received ... in this state, regardless of where the contract of employment was made...." The claimant was a Missouri resident and the injury was sustained in Missouri. There was no error in applying Missouri law to this case.

## III

### Richard's Employment Status

Richard Miller, the claimant's spouse, had been a truck driver since 1973, when he began driving a truck for Edna's father. In 1976 he began working for Hirschbach. At that time, and at all times here material, Richard was "DOT qualified," that is, licensed by the Department of Transportation as an over-the-road driver. Edna was qualified as a "driver trainee" by Hirschbach. She was given a certificate, after examination, which authorized her to drive and ride in a truck either owned by or leased to Hirschbach.

From 1976 to 1981, Richard was employed as a company driver, or as Mr. Hodges, Hirschbach's Safety Director characterized his position, an "employee type driver." On June 11, 1980, Hirschbach and Richard executed a "Contractor Operating Agreement." This agreement was heavily relied on by Hirschbach to establish that Richard was not an employee within the meaning of § 287.020.1, but was instead an independent contractor.

The term "independent contractor" is not defined by our Workers' Compensation statute. However, it has been given judicial definition:

"An 'independent contractor' is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as to the result of his work."

In any event, the substantive amendments made in 1981 were not such as to affect the decision

*Vaseleou v. St. Louis Realty & Securities Co.,* 344 Mo. 1121, 1126, 130 S.W.2d 538, 539[2–4] (1939). The decisions hold without exception that whether the work status is that of employee or independent contractor depends on the facts in the particular case. *Rutherford v. Tobin Quarries,* 336 Mo. 1171, 1177, 82 S.W.2d 918, 921[4] (1935).

By contrast, the Workers' Compensation Law, § 287.020.1, at the time in question, defined the word "employee" to mean:

"... every person in the service of any employer ... under any contract of hire, express or implied, oral or written, or under any appointment or election ...."

The employer-employee relationship by the statutory definition rests on *service,* construed by judicial definition to mean *controllable service.* *Ceradsky v. Mid-America Dairymen, Inc.,* 583 S.W.2d 193, 197 (Mo.App.1979). And, while the contractual designation of the work status of a person is not to be brushed aside or ignored, it is not conclusive when there is evidence to overcome that designation. *Talley v. Bowen Construction Company,* 340 S.W.2d 701, 705 (Mo.1960); *Reichert v. Jerry Reece, Inc.,* 504 S.W.2d 182, 185[1–3] (Mo.App.1973). We therefore note some contract provisions, bearing in mind that this is *not* a case like *Ceradsky,* a case in which the right to control the work performance was not readily demonstrable from the evidence. We do not rely on the general law except to take cognizance of Professor Larson's observation that "... there is a growing tendency to classify owner-drivers of trucks as employees when they perform continuous service which is an integral part of the employer's business...." 1C Larson, Workmen's Compensation Law, § 44.34(e), pp. 8–143, 8–144 (1986).

Looking briefly to the contract, Paragraph 2 thereof very specifically states that "The CONTRACTOR, the CONTRACTOR'S employees and the EQUIPMENT

of this court.

operators are *not* to be considered the employees, agents or servants of the CARRIER at any time, under any circumstances, or for any purpose." However, the next paragraph imposes on the contractor (Richard) the duty "subject at all times to verification by [Hirschbach]" of "[h]iring to operate the EQUIPMENT only those drivers who are qualified under all applicable regulations." In Paragraph 12A, Richard is given the responsibility of hiring drivers, driver's helpers and other workers necessary for the performance of the agreement, and this paragraph provides that such persons "are and shall remain the employee of [the] CONTRACTOR." On the other hand, "Compensation Addendum 'B'" provides for a rate of compensation to the "contractor" for a "Relay or Double Driver operation" higher than that provided for a "single driver" operation. Integrated with the requirements of § 395.3 of the Federal Motor Carrier Safety Regulations, which limit the continuous maximum driving and on-duty time for over-the-road drivers, the contract recognizes and practically requires the use of drivers other than the "contractor" himself. This is especially true in light of Richard's testimony that a "full trip" (one job for Hirschbach) performed by one driver required about a week.

■ As this court held in *Reichert v. Jerry Reece, Inc.*, 504 S.W.2d at 185[1–3], in a slightly different context, it is the actual conduct of the parties, not the language of the written contract, which establishes the work status of a particular worker. Put somewhat differently, when the *evidence* shows that a person to whom a service is rendered has a right to control the performance of the person who renders the service, the relationship of employer and employee is essentially established. *Ceradsky*, 583 S.W.2d at 196[2]. Were it otherwise, a mere written disclaimer in a contract of adhesion could defeat the legislative command, which is that the benefits of the Workers' Compensation Act should be extended to the largest possible class of workers and denial of those benefits should be decreed to the smallest possible class.

*Cox v. Copeland Bros. Const. Co.*, 589 S.W.2d 55, 61[6] (Mo.App.1979).

Some of the "tests" or indicia commonly relied on to distinguish an "independent contractor" from an "employee" have little relevance here. One circumstance generally relied on to establish work status is whether the employer or the employee furnishes the equipment necessary to do the work. In this case, Richard furnished a truck and a driver; Hirschbach furnished the trailers equally necessary to transport food—essentially meat and bananas—across the public highways to the place of distribution. One cannot realistically say that Hirschbach and Richard had different occupations: The occupation of both was the transportation of cargo in interstate commerce. Richard did not own a fleet of trucks; he owned a Peterbilt tractor. Richard was free to decline a particular trip, but he actually rendered continuous service to Hirschbach. On cross-examination, Richard was asked:

\* \* \* \* \* \*

"Q. ... Did you ever pick up a load independent of driving for Hirschbach at any time when you were [operating under] this lease agreement?

A. You mean without—

Q. Right.

A. Besides their's, you mean?

Q. Yes, exactly.

A. No.

Q. You never hooked your truck up to another trailer and pulled it somewhere?

A. Besides their's?

Q. Besides their's.

A. No."

\* \* \* \* \* \*

■ A workman who furnishes himself and the necessary equipment sells not only personal service but the use of the equipment as well and when, as in the case at hand, the equipment is used by the worker in a continuous service integral to the business, a factual inference of employment arises. *Ceradsky*, 583 S.W.2d at 200;

*Pratt v. Reed & Brown Hauling Company,* 361 S.W.2d 57, 64 (Mo.App.1962).

■ Another distinguishing factor often noted in attempts to distinguish an "independent contractor" from an "employee" is whether the worker is paid an hourly wage or "by the job," but payment by the job or even gratuitous service is consistent with the status of compensable employment according to the nature of the employment. *Ceradsky,* 583 S.W.2d at 197; *Horn v. Asphalt Products Corporation,* 131 S.W.2d 871, 872[5] (Mo.App.1939); *Lawson v. Lawson,* 415 S.W.2d 313, 319[6] (Mo.App.1967).

■ The two circumstances present in this case which point ineluctably to Richard's work status as that of compensable employment are: 1) Hirschbach's control of the work activity. Such control is a pre-eminent characteristic of the relationship of employer and employee, *Pratt v. Reed & Brown,* 361 S.W.2d at 63[5]; *Fisher v. Hennessey,* 329 S.W.2d 225, 227[2] (1959), and the exercise of actual control by the employer may indicate the employer's reserved right to control the employee's actions. *Gass v. White Superior Bus Company,* 395 S.W.2d 501, 504 (Mo.App.1965); 2) Hirschbach's power to fire: no single fact is more conclusive of the existence of the nature of the employment than the right to discharge summarily. Like the right of control, the exercise of the right to discharge summarily is indicative of its existence.

We need not devote a great deal of attention to Hirschbach's right to discharge summarily. Paragraph 32 of the written contract provides either party thereto with a right to terminate the agreement upon 30 days' notice. Such is, we suppose, something more than the usual "two weeks' notice" but the decisive fact is that Richard was abruptly and summarily "terminated" the same day he reported the accident.

The exercise of control, however, is evident in many ways. Of course, the control did not extend to the starting, stopping and guiding of the truck upon the highway, but as the Administrative Law Judge observed,

that aspect of control does not readily lend itself to supervision. To relate discretely the circumstances indicating control of the work being done without recounting the entire record, we point out:

1. Edna, the claimant, testified that "we was told to keep our unit full [of fuel]" while she and her husband were on the road because the commodities being hauled required refrigeration.

2. Richard kept his truck at Mountain Grove, in Wright County. As we have said, "[Hirschbach paid] a higher percentage [of the total revenue received] if you run relay and [so] I only had to drive a route a week." Hirschbach has argued that it did not designate the route to be taken, but as Richard put it "[y]ou were told what time [the load] had to be there and you took the closest route."

3. When Richard needed to know what job was to be done, he "would call Hirschbach in Sioux City dispatch office and they would tell me what trailer to pick up and where it went." If the dispatch was meat, Richard was instructed "[t]o make sure the temperature was correct on the [way] bills. Run your unit at a certain temperature and keep it checked as often as you could." Meat dispatches were usually delivered to New Orleans, Atlanta, Houston, Dallas or Jackson in Mississippi.

4. After he reached his destination, Richard was required to wash out the trailer and "call in" to Hirschbach's dispatcher. He was not free to obtain a return load without Hirschbach's permission. On one occasion Richard hauled a load of "swinging" meat to Atlanta. He called Hirschbach's dispatcher. He was instructed to go to Dalton. Richard had his truck washed and went to Dalton. A carpet manufacturer there told Richard he had four to five loads going to New Orleans. Richard called dispatch and was told that "we [Hirschbach] can't haul them." He was obliged to wait. At other times Richard was dispatched with meat bound for Galveston; when he reached his destination he was dispatched to Gulf Port for bananas, while another lessor was dispatched from

Gulf Port to Galveston to pick up a load there.

5. Richard was authorized, and by the terms of his contract and the federal safety regulations was required to employ assistant drivers. However, he could employ a particular driver "[o]nly if Hirschbach approved them as a driver."

Other particular duties, principally the keeping of records required by the Department of Transportation, were performed by Richard under Hirschbach's supervision. What we have recited is sufficient to show that Hirschbach exercised actual and complete control over the performance of the work Richard was employed to perform. His work status was that of compensable employment. He was Hirschbach's employee within the meaning of § 287.020.1.

## IV

### Claimant's Employment Status

 Edna was at all times Richard's wife, and she was not paid separately when Richard chose to enlist her services as an assistant driver. However, neither her relationship to her husband nor the fact that her services were gratuitous prevented her becoming an "employee" within the scope of the Workers' Compensation Act. *Lawson v. Lawson*, 415 S.W.2d at 319–20[6]. This is not a case, like *Lawson* and several other widely misunderstood precedents, in which liability rests primarily upon the provisions of § 287.040.1, but our Supreme Court, without particular reference to § 287.040.1, has held that:

> "In Missouri, an uncompensated worker is an employee by appointment if he is in the service of an employer and that employer exercises control, or has the right of control, over the worker...."

*Stegeman v. St. Francis Xavier Parish*, 611 S.W.2d 204, 206[1] (Mo.banc 1981). This is true because the definition of the word "employee" includes any "person in the service of any employer ... under any contract of hire ... or under any appointment." Section 287.020.1.[3] In *Stegeman*, the court referred to, and undoubtedly intended that a showing of compensable employment by *appointment* include some proof of a right to control the appointed employee by the employer for whom the employee was appointed.

We have, of course, carefully read the Administrative Law Judge's conclusions. In the conclusion we have set out above, the Administrative Law Judge concluded, in part:

> "In considering Edna Miller's position, Hirschbach does not have the right to control her activities nor is she in the service of Hirschbach but rather Richard Miller does have the right to control and she is in the service of Richard Miller. It is my opinion that Edna Miller is not an employee of Hirschbach on this basis but rather is an employee of Richard Miller."

However, the Administrative Law Judge also concluded that:

> "... Since Richard Miller is an employee of Hirschbach and (even the employer in its brief indicates that Edna Miller is an employee of Richard Miller) since the agreement (Claimant's Exhibit S) gives Richard Miller the right to hire co-drivers, it is my opinion that Edna Miller is Richard Miller's employee and, therefore, by reason of Richard Miller's relationship with Hirschbach, Edna Miller is an employee of Hirschbach and, accordingly, is entitled to workers' compensation benefits as hereinafter stated."

---

**3.** We would call attention to the fact that the "employee by appointment" idea has *not* been as broadly applied by our courts as some cases and comment imply. In both *Lawson*, supra, and *Fielder v. Production Credit Association*, 429 S.W.2d 307 (Mo.App.1968), we were concerned with injuries sustained *on the employer's premises*. Likewise in *Pruitt v. Harker*, 328 Mo. 1200, 43 S.W.2d 769 (1931), the court was dealing with injuries sustained by a worker performing services on the employer's premises. We cannot say with certainty that the mandatory provision of what is now § 287.040.1 was controlling in any of these cases, but this court in both *Lawson* and *Fielder* was careful to note the effect of § 287.040.1 in determining the scope of an "appointment" by a "statutory employer." Here, we have an *express* power of *selection* conferred upon the husband by contract, subject to the employer's (Hirschbach's) approval.

We are unable to account for the lack of finding that Hirschbach exercised control over Edna Miller's activity. Surely without the exercise of some control by Hirschbach, the claimant could not be an employee by "appointment" within the intendment of § 287.020.1. *Stegeman*, 611 S.W.2d at 206. The most we can say, with deference to the Commission and to the Administrative Law Judge, is that both conclusions are based upon an application of the law to the facts and for the reasons stated at the outset are not binding upon this court.

■ Our reading of the record leaves us convinced that Hirschbach had as much control over Edna—when she was driving—as it had over Richard. Edna was not some random driver selected by Richard at his pleasure. Edna had been employed by Hirschbach as an assistant driver before Richard entered into the truck lease under which he was operating when Edna was injured. Richard was asked at the hearing on this case: "Q. Could you put anybody on your truck that you wanted to put on it to drive? A. Only if Hirschbach approved them as a driver. Q. So you could not put anybody on your truck as a driver without Hirschbach's approval? A. No."

The evidence of control came from Edna herself, without contrary testimony. She testified that the route over which she drove was basically from north to south and back again. She was required to keep a daily log to be sent to Hirschbach. She signed the log book herself.

At the time Edna was injured, Richard had traveled from Sioux City to Mountain Grove, was "out of hours and he was tired." The trailer he was pulling was loaded with boxed meat and Edna proposed to drive the rest of the way to Memphis. When Richard and Edna left Mountain Grove, Richard was in the sleeper cab. The accident occurred after the load had been taken south on Highway 60 to its junction with Highway 63 and the truck had been driven through West Plains. Edna testified much as Richard had testified; Hirschbach maintained control by telephone from Sioux City. Instruction was received from Hirschbach concerning the temperature to be maintained in the trailer unit; the fuel for the temperature control unit was purchased at designated locations by Hirschbach. The time of delivery was shown on a manifest prepared by Hirschbach. As we have already observed, when she drove, it was she who maintained the daily log. We conclude that Edna was Hirschbach's employee by appointment and that her employment was compensable employment within the intent of § 287.020.1. The Commission properly granted an award of compensation.

V

*Calculation of Award*

■ As a final assignment of error, the employer contends that the Commission erroneously calculated the award. *Stegeman* is quoted. In *Stegeman*, the award of compensation was held erroneous because it had been calculated under § 287.250(6) but was based solely and wholly on evidence of the annual earnings of one comparable worker. *Stegeman v. St. Francis Xavier Parish*, 611 S.W.2d at 210[5].

In our case, the situation is somewhat different. Laws of Mo.1981, p. 408, applicable to this case, did not change the provisions of § 287.250 as they apply to this case, but the Commission had more evidence before it than it apparently had in *Stegeman*. As the claimant argues, the Administrative Law Judge had before him evidence of Jerry Claxton, who sometimes drove for Richard and sometimes drove for his father, and who was in an employment much similar to Richard's. However, Richard also testified as to the going rate for part-time drivers who were paid by the "half-trip." From Richard's testimony and that of Claxton, the Commission had adequate evidence before it from which to calculate Edna's average weekly wage, if she had had one. Section 287.250.6 necessarily vests the Commission with some degree of discretion and latitude. We find that the allowance for reasonable and necessary medical expenses is also based upon

competent and substantial evidence. The point is without merit.

For the reasons stated in detail, the order of the Department of Labor and Industrial Relations is in all respects affirmed.

MAUS, Acting P.J., PREWITT, C.J., and CROW, J., concur.