Robin L. WHITE, Appellant,

v.

DALLAS & MAVIS FORWARDING CO., INC. and Protective Insurance Co., Respondents.

No. WD 46797.

Missouri Court of Appeals, Western District.

April 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

Application to Transfer Denied Aug. 17, 1993.

Robert K. Ball, II, David A. Clark, Kansas City, for appellant.

Robin L. Bullock, Patricia A. Keck, Schroff, Glass & Newberry, Springfield, for respondents.

Before LOWENSTEIN, C.J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Robin White claimed benefits under the Workers' Compensation Act for injuries sustained while he was driving his tractor. The administrative law judge denied benefits and that decision was affirmed by the

Labor and Industrial Relations Commission. On appeal White contends that he was an employee of Dallas & Mavis Forwarding Company (D & M) and not an independent contractor. Reversed and remanded.

In December of 1988, White attended an orientation meeting conducted by D & M for prospective truck drivers. White made application to become a driver and after being informed that his application had been accepted, he was given a road test, a written Department of Transportation test, physical exam and a drug scan. The company inspected his truck and gave White instructions on how to fill out various forms.

A representative of D & M told those who were being hired that they would have a choice of becoming "union workers" or "independent contractors." The independent contractor would receive four percent more pay than union workers but would have no union benefits. White testified that the D & M representative stated that D & M preferred that the drivers become independent contractors because the union pension fund was so far in debt that it would not be of any benefit to them.

White was given a pre-printed contract entitled "Independent Contractor Lease" prepared by D & M. By this agreement White leased his tractor and trailer to D & M and White was designated as an independent contractor. The agreement stated that D & M would not cover White with workers' compensation and specifically disclaimed any liability for workers' compensation benefits to be paid by D & M.

At the meeting, White was given instructions on how to prepare fuel receipt forms which designated D & M as the purchaser of the fuel although White was required to pay for the fuel. These reports were used by D & M to show compliance with D & M's obligation to pay fuel and mileage taxes in the states through which White drove. White was told to make certain that he purchased sufficient fuel in each state to cover the number of miles driven in that state. He was told that if he failed to purchase sufficient fuel in each state to cover applicable taxes assessed against D & M that the balance would be deducted from his pay.

White was paid on a commission basis and he paid for most of his own expenses during trips. He was to be reimbursed by D & M for gas permits, taxes, cash tolls and miscellaneous approved road expenses. However, D & M would not pay motel expenses unless it had given approval for White to stay overnight.

In addition to the fuel reports, D & M required White to keep a log book detailing his movements, whereabouts, time spent and duties performed in each state. White was required to keep in daily contact with D & M by calling the dispatcher at the D & M office in Kenosha, Wisconsin every morning to report any irregularity such as a late arrival, late delivery or pickup or any damage to the load.

When White was advised of a load available for him to haul, D & M would tell him where to pick up the load, the time to pick it up, and whether the load had to be strapped, chained or tarped and any other special instructions. White testified that on a few occasions he had tried to refuse a load, but D & M told him that if he did not want to haul the load he could "turn in his plates" because the company "had no use for him."

White was also told to take the most direct route in hauling a load because the gross revenue for the haul was based on the miles involved. The mileage was based on the Household Mover's Guide which lists mileage between most major cities. Sometimes D & M would tell White which route to take in order to avoid low overpasses.

White was told the time to deliver the load to the consignee. After the load was unloaded White was required to call D & M who would try to find a load for White to haul on his return home. When White would try to turn down a load that would not send him home, he was told that if he did not take the load D & M had no use for him.

D & M gave White a uniform ICC cab card and ICC operating authority under which he was operating his equipment.

With the exception of one or two trip leases which had been expressly approved by D & M, White was not permitted to haul for anyone else. D & M had refused other trip lease requests by White and under the contract White would be terminated if he trip leased without permission.

At the time he entered into the agreement, White had "bobtail" insurance on his tractor but D & M required him to get insurance approved by it.

White was given specific instructions on handling and reporting accidents such as obtaining the names of witnesses.

The agreement provided that it could be terminated by either party upon the giving of thirty days notice. However, D & M terminated White without notice after the accident.

In March of 1989, White was preparing to haul an over-dimension load from Kansas City to Atlanta. D & M had been unable to locate a trailer that would accommodate the load, but White had located a trailer which he purchased. White took the trailer to Sedalia to have it modified to accommodate the load. D & M told White to go to Oak Grove to pick up the load permits which would be required to haul the oversize load to Atlanta. While White was traveling to Oak Grove in his tractor to pick up the permits, his tractor was forced off the road by another driver. As a result of the accident White suffered the severe injuries which is the basis of his workers' compensation claim.

■ The scope of review in this case is controlled by the rule that decisions of the Commission which involve the interpretation or application of law, as distinguished from the determination of the facts, are not binding upon the appellate court and fall within its province of review and correction. *Miller v. Hirschbach Motor Lines,*

*Inc.,* 714 S.W.2d 652, 655 (Mo.App.1986). The finding that a claimant is not an "employee" represents an application of law, as distinguished from a finding of fact. *Id.* Here, the decision of the Commission was that White was not an employee and, thus, ineligible for worker compensation benefits. Therefore, that decision is subject to correction by this court.

■ An employee under the Workers' Compensation Act is defined as "every person in the service of any employer ... under any contract of hire, express or implied...." Section 287.020.1, RSMo 1986. In *Ceradsky v. Mid–America Dairymen, Inc.,* 583 S.W.2d 193, 197 (Mo.App.1979), this court held that the statutory definition of employee rests on service which has been construed by judicial definition to mean controllable service.[1]

On the other hand, an independent contractor has been defined as "one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as to the result of his work." *Miller,* 714 S.W.2d at 656. The question in this case is whether or not D & M had the right to control the service of White because when a person to whom service is rendered has the right to control the performance of the person rendering the service, the relationship of employer and employee is essentially established. *Ceradsky,* 583 S.W.2d at 196[2].

The Commission affirmed the award of the ALJ which found that the designation in the agreement between D & M and White that described White as an independent contractor was controlling. The finding was that the parties had the freedom to contract to allocate workers' compensation liability to White and such contract should be upheld.

---

**1.** In *Ceradsky,* this court held that when the evidence does not clearly demonstrate the element of control in the work relationship, the "relative nature of the work test" determines employment status for purposes of workers' compensation. *Ceradsky,* 583 S.W.2d at 199[4]. In this case, however, it is clear from the facts that D & M had a right to control the work activity of White.

■ Although a contractual designation of whether or not a person is an employee or an independent contractor is not to be ignored, it is not conclusive when there is evidence to overcome the designation. *Miller*, 714 S.W.2d at 656[6]. The Commission found that the evidence was not sufficient to overcome the designation in the agreement that White was an independent contractor. A review of the evidence set out above leads this court to the conclusion that there is sufficient evidence that D & M controlled the service provided by White so that the designation of White as an independent contractor is overcome. Without detailing all of the evidence again, it is sufficient to consider the following: (1) White was told when and where to pick up a load; (2) although he was not directly told what route to take in delivering the load, D & M effectively controlled the choice of route by allowing compensation based only on the most direct route mileage; (3) during the trip White was required to call in every day to report his whereabouts and any irregularities in the trip such as any departure from the schedule which had been established for delivery of the load; (4) when the load was delivered and White had an empty trailer, he was required to call D & M for instructions as to when and where to pick up another load; (5) when White indicated he wanted to decline a load which would not take him home, White was told if he did not do so he could "turn in his plates"; (6) at the conclusion of each trip White was required to turn in copies of his log which gave a history of his trip; (7) White was not free to trip lease without the express approval of D & M and except in rare instances, White was refused permission to trip lease. These factors point to control by D & M of White's service in contrast to an independent contractor who performs a piece of work according to his own method without being subject to the control of the employer.

Finally, *Miller* held that the power to fire a person is indicative of the existence of an employer-employee relationship. *Miller*, 714 S.W.2d at 658[10]. "Like the right of control, the exercise of the right to dis-charge summarily is indicative of its existence." *Id.* Although the agreement between D & M and White provided that either party could terminate by giving thirty days notice, D & M summarily terminated White in May of 1989. As in *Miller*, this is a fact in determining whether or not White was an employee of D & M.

Having found that the facts are sufficient to overcome the designation in the agreement that White was an independent contractor, it follows that the decision of the Commission can not stand. The decision denying White workers' compensation benefits is reversed and this cause is remanded to the Commission with directions to find that White was an employee of D & M on the date of his accident and to take such further proceedings as may be required by law.

All concur.