Johnnie WALLS, Deceased, by Ophelia WALLS, Claimant,

v.

ALLEN CAB COMPANY, INC., General Dispatch Company, Missouri State Holdings Corporation, Missouri State Bank & Trust Company, Employers,

Fidelity and Deposit Co. of Maryland, Insurer,

and

Treasurer of Missouri, As Custodian of Second Injury Fund.

Nos. 66931, 67024.

Missouri Court of Appeals, Eastern District, Division Four.

May 23, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1995.

Application to Transfer Denied Sept. 19, 1995.

Robert H. Sihnhold, St. Louis, for claimant.

J. Bradley Young, Roberts, Perryman, Bomkamp & Meives, P.C., St. Louis, for Mo. State Bank, Gen. Dispatch and Mo. State Holdings Corp.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Erwin O. Switzer, III, Asst. Atty. Gen., St. Louis, for Second Injury Fund.

KAROHL, Judge.

The Missouri State Bank & Trust Company, General Dispatch Company, and Missouri State Holdings Corporation (collectively referred to as "Bank") appeal from the Labor and Industrial Commission's (Commission) award to the spouse of Johnnie Walls (claimant) for workers' compensation death benefits. The Commission found Missouri State Bank & Trust Company (Missouri State Bank) was Johnnie Walls' employer when he was murdered in a taxi cab he owned and operated under a permit of Allen Cab Company (Allen). The Commission concluded Missouri State Bank was operating the taxi cab business and employed drivers, including Johnnie Walls. It used an uninsured company, Allen, as the nominal employer. The companies were the alter ego of Missouri State Bank.

On April 25, 1988, Walls was found fatally shot in a vehicle identified as Allen Cab, No. 109. Walls began working as a cab driver under a permit from Allen in early 1966. Sometime after 1977 he began working full time as a cab driver. In 1987, he started working only part-time because of increasing vision problems. He is survived by a widow, claimant, Ophelia Walls. She filed a claim as a dependent under the Missouri Workers' Compensation Act.

The Administrative Law Judge (ALJ) announced the issues to be tried as follows: the existence of an accident; liability for past medical expenses; rate of liability for death benefits and burial; liability of Second Injury Fund (if employer is uninsured); existence of employer; whether employer maintained insurance with Fidelity and Deposit Company of Maryland; statute of limitations defense; and ultimately, the question of whether alleged employee was an independent contractor.

The ALJ found Johnnie Walls was in fact an employee of Allen at the time of his death. The ALJ determined that Allen was subject to Missouri Workers' Compensation Law and set the compensation rate of benefits at $150

per week from the date of death to the date of the award and continuing until the widow's remarriage or death. The ALJ credited the employer for the $2,000 paid to claimant subsequent to death, but made the employer responsible for $2,000 for burial benefits and for medical expenses in the amount of $10,-368.72.

After determining Allen was uninsured at the time of death, the ALJ ruled the Second Injury Fund was jointly liable for all death benefits pursuant to § 287.240 RSMo 1986. The ALJ rejected the assertion by the Second Injury Fund that the claim was barred by the statute of limitations. The ALJ found the statute allows three years for filing a claim when a report of injury is not filed. Section 287.220 RSMo 1986; *Lyons v. Lyons Truck Service*, 831 S.W.2d 706, 710 (Mo.App. W.D.1992). The ALJ also determined the evidence did not warrant "piercing the corporate veil." The ALJ found Johnnie Walls was not an employee of Missouri State Bank under the definition of employee set out in § 287.020.1 RSMo 1986.

The Commission adopted some of the findings of the ALJ issued September 16, 1993. However, it restructured the final award. It ruled Allen was not the true workers' compensation employer of Johnnie Walls. The Commission majority found substantial and competent evidence in the record to find Missouri State Bank was Walls' employer and its workers' compensation insurance coverage extended to cover the death of the claimant. The Commission "pierced the corporate veil" of Allen after finding complete domination and control over Allen by Missouri State Bank. The purpose of this "corporate web" was to gain profits for Missouri State Bank while disregarding requirements of the Workers' Compensation Act.

Bank argues the Commission erred in the following: (1) finding Walls was an employee and not an independent contractor; (2) finding Walls was an employee of Missouri State Bank; (3) "piercing the corporate veil" of Allen to make an award against Missouri State Bank; (4) not finding the claim barred by the statute of limitations; and, (5) failing to assess liability against the Second Injury Fund.

The standard of review in a workers' compensation case is limited. We must review the entire record to determine whether the Commission's award is supported by competent and substantial evidence. *Willis v. Jewish Hospital*, 854 S.W.2d 82, 84 (Mo. App.E.D.1993). An appellate court will defer to the judgment of the Commission on factual disputes regarding inferences and evidence and will not substitute its own judgment. *Id.*

Bank's first point is the Commission erred in finding the claimant was an employee rather than an independent contractor. Bank asserts the Commission's finding was not based on competent and substantial evidence regarding the ownership of the cab. The Commission found the requisite supervision and control to support a finding that Walls was an employee. Under Workers' Compensation Law, claimant must establish an employee-employer relationship by showing claimant worked in the service of the alleged employer and the employer controlled those services. *Lawson v. Lawson*, 415 S.W.2d 313, 319 (Mo.App.1967).

The determination of whether Walls was an employee or an independent contractor is a determination of law that is subject to independent appellate review. *Miller v. Hirschbach Motor Lines, Inc.*, 714 S.W.2d 652, 654 (Mo.App.1986).

The definition of an employee is set out in § 287.020.1 RSMo 1986. According to the relevant parts of the statute:

The word **"employee"** as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officers of corporations. Any reference to any employee who has been injured shall, when the employee is dead, also include his dependents, and other persons to whom compensation may be payable.

The term "independent contractor" has been judicially interpreted in the absence of

a definition under the Workers' Compensation statute:

> An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as the result of his work. *Miller*, 714 S.W.2d at 656, (quoting *Vaseleou v. St. Louis Realty & Securities Co.*, [344 Mo. 1121] 130 S.W.2d 538, 539 (Mo.1939)).

Walls owned his own cab. He was responsible for maintenance and repair of the vehicle. He painted and identified the cab according to the rules of Allen. He paid stand dues of $600 per month to Allen for radio dispatching, office overhead, liability expenses, and the use of Allen's cab permit. The City of St. Louis requires two permits in order to operate a cab. It issues a limited number of permits to each cab company to be distributed to individual drivers. These permits are for the vehicle. Allen was in possession of approximately 90 cab permits at the time of Walls' death. The permits must be periodically renewed in order to prove to the city liability insurance is in place. In addition, the individual driver must obtain a personal driving permit issued from the city. Walls was in possession of both permits at the time of death.

Walls enjoyed the independence of setting his own hours, driving his own cab, and collecting fares directly from patrons. He received radio dispatches from Allen but he was not required to respond to any specific requests. An individual performing his own work on his own terms may be construed as an independent contractor. *Miller*, 714 S.W.2d at 656. However, Walls' ability to drive his cab and perform his work remained dependent on his relationship with Allen. He was compelled to follow the rules of the cab company and was required to pay the stand dues each month in order to retain his license. The existence of employer control over the services to be provided by an individual is indicative of an employer-employee relationship. *Id.*

Bank asserts as a matter of law Walls was an independent contractor. It emphasizes distinctions in employer-employee relationships. In *Goodman v. Allen Cab Co., Inc.*, 360 Mo. 1094, 232 S.W.2d 535 (1950), the court found a cab driver was an independent contractor based on his independence in accepting fees and dispatches, purchasing gas, and his individual responsibility for the maintenance of the vehicle.

Walls experienced similar independence concerning his acceptance of work and the maintenance of his vehicle. However, he was dependent on Allen for his permit to operate a cab and his liability insurance. Allen compelled its drivers to purchase gas from them and instigated specific rules and regulations concerning the appearance and operation of the cabs. The present facts are more in line with the case of *Shinuald v. Mound City Cab Co.*, 666 S.W.2d 846 (Mo.App.1984) where a similar relationship existed concerning stand dues, liability insurance, maintenance and ownership of cabs, and the use of a cab permit.

This court in *Shinuald* examined the employer's control or right to control an individual through "relative nature of the work tests." *Ceradsky v. Mid–America Dairymen, Inc.*, 583 S.W.2d 193, 197 (Mo.App. 1979). Factors the court considered included: (1) the character of the claimant's business or work; (2) the skills involved; (3) the independence of the enterprise; (4) to what extent it is expected to carry its own accident burden; (5) the nature of business—continuous or intermittent; and (6) whether the duration is sufficient to establish services or merely the completion of a particular job. *See, Ceradsky*, 583 S.W.2d at 199; *Howard v. Winebrenner*, 499 S.W.2d 389, 395 (Mo. banc 1973). The court determined the right to control is in proportion to the supervision appropriate to the work being performed and the skill required to do it. *Ceradsky*, 583 S.W.2d at 197.

The Commission considered specific examples of Bank's control over Walls. There was evidence to support a finding Walls was required to purchase his gasoline from Allen. Claimant indicated Walls had to purchase gas from Allen. The current owner of Allen testified that was not now required. The ALJ and the Commission apparently relied

on testimony of claimant in determining Walls was compelled to purchase gas from Allen. In review of findings of the Commission, this court will approach the evidence in a light most favorable to the Commission. *Crum v. Sachs Electric,* 769 S.W.2d 131, 133 (Mo.App.1989).

Walls' work was driving a cab. In order to perform his job he was required to abide by the rules and regulations of Allen, including control over the appearance of his cab. He relied on Allen's dispatching services for potential fares and used Allen's city permit. An employer's control over the services and details of the work provided by an individual is an indication that an employer-employee relationship exist. *Miller,* 714 S.W.2d at 656; *Gaston v. J.H. Ware Trucking Inc.,* 849 S.W.2d 70, 74 (Mo.App.W.D. 1993). Although supervision was not comprehensive, Walls could not independently work as a cab driver in the City of St. Louis. He performed services for a cab company that enabled him to work. The work performed was a regular and continuous part of the services offered by Allen. Claimant was locked into providing services for Allen and therefore he did not have an independent business. *Shinuald,* 666 S.W.2d at 849. The finding Walls was an employee was not error.

Bank's Points II and III both argue the Commission erred in finding Walls was in fact an employee of Missouri State Bank and therefore will be considered together. The Commission modified the award of the ALJ who found Allen Cab Company was the employer. It determined Missouri State Bank's "web of corporations" were attempts to insulate itself from liability in order to obtain profit. The Commission found: (1) Missouri State Bank dominated the decisions and operations of Allen; and (2) Missouri State Bank failed in its statutory duty to provide insurance. On appeal, Missouri State Bank argues the Commission erred in "piercing the corporate veil" because there was no substantive evidence that corporate formalities for Allen, General Dispatch and Missouri State Holdings Corporation were ignored. Missouri State Bank contends Allen was a separate corporation from itself and its subsidiaries.

For workers' compensation purposes, in order to "pierce the corporate veil," a claimant must show: 1) control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the nominal company had at the time of the injury no separate mind, will, or existence of its own; 2) such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory duty, or dishonest and unjust act in contravention of claimant's legal rights; and 3) the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. *Collet v. American National Stores, Inc.,* 708 S.W.2d 273, 284 (Mo.App.1986). "Piercing the corporate veil" is a viable doctrine under Missouri Workers' Compensation Law. *Smith v. Fabricated Metal Products,* 883 S.W.2d 537, 539 (Mo.App.E.D.1994).

The evidence supported a finding Allen was not a separate legal entity. The Commission concluded there was sufficient evidence to show Missouri State Bank totally dominated Allen and used it to avoid worker's compensation liability. In November, 1987, Missouri State Bank foreclosed on a loan secured by 51% of the stock of Allen. It then transferred the Allen stock to Missouri State Holdings Corporation. In February, 1988, Missouri State Holdings Corporation transferred the stock to General Dispatch Corporation. Missouri State Bank owned Missouri Holdings Corporation and General Dispatch Corporation. The directors of these companies were all officers of Missouri State Bank. William Foreman was asked to conduct the daily business of Allen as a favor to Doug Gift, Executive Vice President of Missouri State Bank. Foreman was not compensated for his efforts. He was interested in ultimately purchasing Allen. The final decision-making authority remained with employees of the Missouri State Bank. Moreover, after Foreman died, its employees took over the daily operations of Allen including, issuance of the approximately 90 permits to drivers. They moved Allen's business office to the same building as Missouri State Bank. These facts indicate Allen was

operated while completely dominated and controlled by Missouri State Bank from approximately November of 1987 to June 1, 1989 when Allen was sold to another party.

 Bank argues Allen was merely an independent subsidiary with a completely separate legal identity. Mere ownership of a part or the majority of stock along with officers serving in both corporations is not sufficient to establish domination and control. *Blackwell Printing Company v. Blackwell–Wielandy Company*, 440 S.W.2d 433, 437 (Mo.1969). In fact, subsidiaries may have some common directors so long as there are no common employees and no commonality of corporate existence. *Boswell v. May Centers, Inc.*, 669 S.W.2d 585 (Mo.App.1984). However, in this case, in addition to common directors, Missouri State Bank used common employees to control the operations of Allen. Moreover, its employees obtained and distributed the cab operating permits and at one point conducted Allen's business out of the Missouri State Bank's building. This was sufficient to support the Commission's finding Missouri State Bank was the true employer of Walls.

 The evidence also supports a finding the control was used in violation of a statutory or legal duty to provide compensation insurance; the unjust act contravened employee's legal rights; and the actions were the proximate cause of a loss of benefits. *See, Collet,* 708 S.W.2d at 284. Missouri State Bank became more than the owner. It became the operator of Allen following the death of Foreman. Missouri State Bank intended to profit from operating Allen but it was not willing to sufficiently capitalize or provide insurance for employees of Allen. The Workers' Compensation Act requires employers of four or more employees to be subject to the act and provide workers' compensation insurance coverage for their employees. Section 287.060 RSMo 1986. In addition, operating a corporation in the absence of adequate protection or funds is an indication of an improper purpose or the reckless disregard of the rights of others. *Collet,* 708 S.W.2d at 287; *Swall v. Custom Automotive Services, Inc.,* 831 S.W.2d 237, 241 (Mo.App.W.D.1992). Missouri State

Bank had a duty to capitalize and provide insurance once it dominated and controlled the daily operation of Allen.

Alternatively, Bank argues the claim was not filed within the applicable statute of limitations. Death occurred on April 25, 1988. The initial claim against only Allen was filed October 5, 1989. The claim was amended on September 17, 1991, to state a claim against Missouri State Bank & Trust Company. It was also amended on August 24, 1992, to include the Missouri State Holdings Corporation and the General Dispatch Company as alleged employers.

Section 287.430 RSMo 1986, sets out the time limitations for filing a claim under the Workers' Compensation Act. A request for relief may only be obtained if it is filed:

> [W]ithin two years after the date of injury or death, or the last payment made under this chapter ˙on account of the injury or death, except that if the report of injury or death is not filed by the employer as required by section 287.380, the claim for compensation may be filed within three years after the date of injury, death, or last payment made under this chapter on account of the injury or death. Section 287.430 RSMo 1986.

Neither Allen, as the original alleged employer, nor Missouri State Bank, as subsequent alleged employer, ever filed a report of injury regarding Johnnie Walls. Therefore the statute of limitations would run three years after date of death or the last payment made to the claimant.

 The ALJ and the Commission relied on the testimony of claimant as well as a letter from Allen to establish payments were made to Ophelia Walls. We examine the record in the light most favorable to the award. *Pruteanu v. Electro Core, Inc.,* 847 S.W.2d 203 (Mo.App.E.D.1993). Ophelia Walls testified the last payment she received was either in January or February of 1989. If we assume January 1989, as the last date of payment, the statute of limitations would not have expired until January of 1992. The claim against the Missouri State Bank & Trust Company was filed on September 17,

944

1991. The statute of limitations does not bar that claim.

The Second Injury Fund submitted a response and a cross-appeal. It asserts the Commission erred in finding claimant was not an independent contractor. Otherwise, it would agree with the Commission's findings that: (1) Walls was an employee of Missouri State Bank; (2) the statute of limitations does not bar the claim; and, (3) Missouri State Bank, not the Fund is "implicitly" liable to claimant. The Commission found Fidelity and Deposit Company of Maryland was the workers' compensation insurance carrier for the Missouri State Bank and its liability extended to cover award for death benefits. We find Walls was an employee of Missouri State Bank, covered by its insurance, and therefore the Second Injury Fund is not liable. Other points in the cross-appeal of the Second Injury Fund on December 27, 1994, need not be addressed.

We affirm.

GRIMM, C.J. and AHRENS, P.J., concur.