Carl A. SEATON, Claimant–Appellant,

v.

CABOOL LEASE, INC., Employer–Respondent,

and

Home Insurance Co–rem, Insurer–Respondent,

and

Treasurer of the State of Missouri, as Custodian of the Second Injury Fund, Respondent.

No. 22775.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 29, 1999.

Motion for Rehearing or Transfer Denied Nov. 22, 1999.

Application for Transfer Denied Jan. 25, 2000.

C. David Whipple, Whipple Law Firm, Kansas City, for Appellant.

Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, for Respondents.

PHILLIP R. GARRISON, Chief Judge.

Carl A. Seaton ("Claimant") appeals from a final award of the Labor and Industrial Relations Commission ("Commission") denying his claim for worker's compensation. On appeal, Claimant contends that the Commission erred in finding that he was not an employee of Cabool Lease, Incorporated ("Cabool Lease") as Cabool Lease had actual control or right of control over Claimant's work and had the right to summarily discharge Claimant.

Viewed in the light most favorable to the Commission's award, the facts are as follows: Claimant is an electrician, operating an unincorporated business known as Seaton Electric. Seaton Electric does general, light-duty electrical work and employs, in addition to Claimant, one to three workers.[1] Seaton Electric is operated from Claimant's home, has multiple customers in the Cabool area, has assets including a company truck, hand tools, and electrical supplies, and has its own tax identification number. Since 1991, Claimant has reported income on his tax returns as being generated by Seaton Electric.

Cabool Lease is a corporation engaged in the business of owning, leasing, and servicing semi-tractors and trailers. Claimant, prior to establishing his own business in 1991, worked for Cabool Lease[2] as a truck driver and hauler from 1979 until 1990.[3] He was paid a weekly

---

1. At the time of Claimant's accident, July 4, 1991, three employees were employed at Seaton Electric, two part-time and one full-time.

2. Cabool Lease has a sister corporation known as Cabool Transport. Claimant did work for both companies during his term of employment.

3. In the record, there is some dispute as to when Claimant resigned. Claimant testified that he terminated his employment in May

salary based on the hours he worked. Claimant did no electrical work for Cabool Lease, and it had no electricians employed during this time period.

In 1991, James Dixon ("Dixon"), assistant maintenance manager of Cabool Lease, hired Seaton Electric to install electrical and lighting systems in a building addition to its business premises. Dixon and Claimant entered into an oral agreement in which Seaton Electric was to be paid $15.00 per man-hour and would be reimbursed for the cost of materials. Before the work commenced, Dixon and Claimant walked through the addition and determined where lights, switches, and outlets should be placed. Following this initial walk-through, Seaton Electric was left in charge of the day-to-day performance of the contract work.

From June 28, 1991, until July 7, 1991, Claimant and two of his employees, Jeff Cole and Fred Wheat, performed the electrical work pursuant to the oral agreement. Claimant purchased all the electrical supplies, brought the necessary tools to the job site, provided the necessary workers, and set the working hours. Claimant billed Cabool Lease for the work through the use of Seaton Electric invoices, and Cabool Lease paid such invoices without withholding taxes, making employer FICA contributions, or providing other fringe benefits.

On July 4, 1991, while working at the job site, Claimant was injured when he fell from a ladder. Cabool Lease terminated Seaton Electric's services on July 8, 1991. Thereafter, Claimant filed a claim for worker's compensation for his injuries. A hearing was held on May 23, 1997, and the administrative law judge ("ALJ") found that Claimant was not an employee of Cabool Lease on the date of his injury, but rather an independent contractor, and therefore, was not entitled to worker's compensation benefits. Claimant appealed

the ALJ's order, and on December 17, 1998, the Commission affirmed, finding that the ALJ's decision was supported by competent and substantial evidence on the record as a whole. Claimant appeals from the final award of the Commission.

 The Commission's decision must be upheld if it is supported by competent and substantial evidence on the whole record. *Leslie v. School Services and Leasing, Inc.*, 947 S.W.2d 97, 99 (Mo.App. W.D. 1997); *Wilmot v. Bulman*, 908 S.W.2d 139, 141 (Mo.App. S.D.1995). All evidence and inferences are viewed in the light most favorable to the award, and the award will be set aside only if the Commission's findings are contrary to the overwhelming weight of the evidence. *Watkins v. Bi-State Dev. Agency*, 924 S.W.2d 18, 21 (Mo. App. E.D.1996). However, "[f]indings and awards of the Commission which are clearly the interpretation or application of law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous." *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995). A finding that a worker's compensation claimant is or is not an employee represents an application of law, not a finding of fact, and therefore, is subject to correction by this court. *Leslie*, 947 S.W.2d at 99; *Miller v. Hirschbach Motor Lines, Inc.*, 714 S.W.2d 652, 654 (Mo.App. S.D.1986).

In his first point on appeal, Claimant contends that the Commission erred in finding that he was an independent contractor and not an employee of Cabool Lease as Cabool Lease had actual control or the right to control Claimant, a dispositive factor indicating an employer-employee relationship.

 The Missouri Worker's Compensation Law defines an employee as any "person in the service of any employer ...

---

1991. Cabool Lease, however, testified that Claimant resigned in May 1990, and the company's pay register report indicated that

Claimant's last paycheck was issued on June 8, 1990.

under any contract of hire, express or implied, oral or written." Section 287.020.1, RSMo 1994. In contrast, an independent contractor has been judicially defined as "one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as to the result of his work." *Vaseleou v. St. Louis Realty & Securities Co.*, 344 Mo. 1121, 1126, 130 S.W.2d 538, 539 (1939). A claimant establishes an employer-employee relationship if the claimant worked in the service of the alleged employer and the employer controlled those services. *Gaston v. J.H. Ware Trucking Inc.*, 849 S.W.2d 70, 72 (Mo.App. W.D.1993). "The pivotal question in determining the existence of an employer-employee relationship is whether the employer had the right to control the means and manner of the service, as distinguished from controlling the ultimate results of the service." *Dawson v. Home Interiors & Gifts, Inc.*, 890 S.W.2d 747, 748 (Mo.App. W.D.1995). Although a claimant's employment status must be decided on the facts of each case, there are several factors that must be examined in order to determine whether a right to control existed. *Id.* These factors include: (1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the alleged employer, and (8) the employment contract. *Leslie*, 947 S.W.2d at 100; *Dawson*, 890 S.W.2d at 748. No one of these factors is dispositive, however, and each is relevant to the issue of whether an employer-employee relationship existed. *Watkins*, 924 S.W.2d at 21.

■ In the instant case, the facts demonstrate that the extent of control exerted over Claimant by Cabool Lease was minimal. Dixon advised Claimant as to the locations where the electrical outlets, lights, and switches should be installed. The day-to-day installation work, however, was left up to Claimant and his employees. Seaton Electric decided how to install the wiring and what materials to use. Neither Dixon nor any of the other employees of Cabool Lease had any expertise or training in electrical wiring. At most, Cabool Lease acted in a supervisory capacity as to the ultimate result of Claimant's work, ascertaining whether the ultimate result was being accomplished and deferring to Claimant's expertise in the manner of achieving that result.

■ Similarly, the actual exercise of control was nominal. Dixon was in regular communication with the various contractors working on the building addition in order to determine their progress and coordinate their work; however, he left the daily task of determining how to install the wiring to Seaton Electric. Claimant exercised control over his own Seaton Electric employees working on the site, told them what hours to work, and advised them as to what needed to be done. In contrast, while an employee of Cabool Lease from 1979 until 1990, Claimant punched a time clock, had set hours, and was directly supervised on a daily basis.

■ Claimant's duration of employment also suggests an independent contractor relationship. Claimant was not hired as a full-time employee of Cabool Lease for an indefinite duration. Rather, Claimant's company, Seaton Electric, was hired on a single-job basis to install electrical wiring in a building addition, a job that would likely take no more than a few weeks to complete. Further, Seaton Electric was free to enter into contracts with other customers at the same time it was performing work for Cabool Lease and in fact, did so.

■ Concerning the right to discharge, Cabool Lease if dissatisfied with any of the work being done by any of the contractors on the project could have terminated that contractor's services. Cabool Lease did

terminate Seaton Electric's services on July 8, 1991. The right of an employer to terminate a relationship without incurring breach of contract liability is generally an indication of an employer-employee relationship and weighs against independent contractor status. *Dawson*, 890 S.W.2d at 749; *Cope v. House of Maret*, 729 S.W.2d 641, 643 (Mo.App. E.D.1987).

■ In regard to the method of payment, although Seaton Electric was paid by the hour, which can be indicative of an employer-employee relationship, the method of billing was suggestive of an independent contractor relationship. From 1979 until 1990, while an employee of Cabool Lease, Claimant was paid by the hour and received regular weekly paychecks made out to him personally for a set salary, which included income tax and FICA deductions, and received fringe benefits such as health insurance. In contrast, while working on the addition, Claimant, through Seaton Electric, billed Cabool Lease for materials and labor through the use of Seaton Electric invoices. Cabool Lease paid Seaton Electric's invoices by issuing checks to Seaton Electric and did not withhold taxes, pay FICA employer contributions, or offer fringe benefits. Seaton Electric, in turn, paid the wages of its employees, including those working on the Cabool Lease building addition. Further, Claimant in his 1991 income tax returns identified the income he earned on the Cabool Lease addition as being generated by Seaton Electric and not directly from Cabool Lease, which suggests an independent contractor relationship.

■ In the instant case, the degree to which the alleged employer furnished equipment is also not suggestive of an employer-employee relationship. Claimant, through Seaton Electric, provided a majority of the tools and equipment used on the Cabool Lease addition. Claimant purchased all of the needed supplies, such as wiring and fuses, and billed Cabool Lease for the cost. In addition, Claimant's company also provided the primary manpower for the project.

■ Another factor that must be taken into consideration is the extent to which the work is the regular business of the alleged employer. Cabool Lease is in the business of leasing and maintaining tractors and trailers, has never had any involvement in either the construction or electrical industry, and has never employed electricians. Because of its lack of expertise in the electrical field, Cabool Lease had retained Seaton Electric to work on the addition, a fact that weighs in favor of an independent contractor relationship.

■ Lastly, the employment contract between the two parties must be considered. In the instant case, Claimant personally had no written or oral employment contract with Cabool Lease. The oral agreement was between Seaton Electric and Cabool Lease, as indicated by the parties' invoices and checks. Furthermore, it was a contract wherein Claimant had complete discretion in terms of who performed the electrical work. Claimant could have performed all of the work himself, his employees could have assisted him, or his employees could have done all of the work themselves. It was not a contract personally binding Claimant to do the work. Even more telling of the parties' relationship is the fact that Claimant up until the day that he applied for worker's compensation for the July 4, 1991, accident consistently held himself out as being an independent contractor. In contemporaneous insurance and disability applications submitted in June and July 1991 for an unrelated accident, he repeatedly stated that he was self-employed as an electrician.[4]

4. Exhibit Three was an application submitted by Claimant on June 7, 1991 to the Ford Life Insurance Company. Exhibit Four was an application submitted to Shelter Life Insurance Company on June 2, 1991, by Claimant. Exhibit Five was an application submitted to

After reviewing all of the facts in this case in light of the factors mentioned above, this Court finds that there is substantial evidence to support the Commission's finding that the Claimant was an independent contractor rather than an employee of Cabool Lease. Therefore, Claimant's first point on appeal must be denied.

 In his second point, Claimant contends that the Commission erred in finding that the right of Cabool Lease to summarily discharge Claimant was not conclusive of the existence of an employer-employee relationship. Claimant argues that an employment relationship is created by the right to discharge, regardless of the seven other "right to control" factors. In support of his proposition, Claimant relies on *Miller*, 714 S.W.2d 652. In *Miller*, an employer appealed from the Commission's award granting worker's compensation benefits to the claimant, an injured truck driver. The court affirmed the Commission's award, finding that the claimant was an employee of the trucking company. In its analysis of the employer-employee relationship, the court stated that "no single fact is more conclusive of the existence of the nature of the employment than the right to discharge summarily. Like the right to control, the exercise of the right to discharge summarily is indicative of its existence." *Id.* at 658.

The *Miller* court, while emphasizing the importance of the trucking company's right to discharge the claimant, did not ground its finding in this single factor, as Claimant contends. The *Miller* court scrutinized the parties' entire relationship before concluding that there was an employer-employee relationship. The court found that the employer had furnished the claimant with the necessary equipment for the job; that both parties were engaged in the same occupation; that the claimant rendered continuous and exclusive service to the employer; and that the employer directed the everyday activities of the claimant. The right to discharge, therefore, was not the only dispositive factor in the *Miller* court's finding of an employer-employee relationship.

 In the instant case, the Commission properly considered all eight factors, including the right to discharge, in light of the facts of this case. The right to discharge, in isolation, is not solely indicative of an employer-employee relationship. It is simply one factor, albeit an important one, which must be considered when determining whether an employer-employee relationship has been established. *See Leslie*, 947 S.W.2d at 100; *Dawson*, 890 S.W.2d at 748; *Hutchison v. St. Louis Altenheim*, 858 S.W.2d 304, 305 (Mo.App. E.D.1993). Claimant's second and final point is therefore denied.

The final award of the Commission denying compensation is affirmed.

PREWITT, J., concur.

MONTGOMERY, P.J., concur.

Combined Insurance Company of America

dated July 11, 1991.